NO. 03-446C
(Judge Bruggink)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

LEROY BISHOP, et, al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFF CRAIG CHALMERS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-1111

Attorneys for Defendant

OF COUNSEL:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons

December 22, 2006

## TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S OPPOSITION TO PLAINTIFF CRAIG CHALMERS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . 1

I. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. FCI Otisville, NY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. FDC Philadelphia, PA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. MDC Los Angeles, CA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D. Mr. Chalmers's Claims Involving Government Travel . . . . . . . . . . . . . . . . . . 4

<u>ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. <u>Plaintiff's General Arguments Are Without Merit</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Program Statement 3420.09, Standards of Conduct Is Not An Order To Work Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. BOP Training Materials Are Not An Order To Work Overtime . . . . . . . . . . . . 7

II. Plaintiff's Claims as Associate Warden at FCI Otisville, NY, Fail To Establish A FEPA Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The FCI Otisville Institution Supplement Is Not An Order To Work Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Plaintiff's Position Description Is Not An Order To Work Overtime . . . . . . . 8

C. The Correctional Services Manual Is Not An Order To Work Overtime . . . . . 9

D. Plaintiff's Claims For Preparing To Attend Meetings At The Start Of His Shift Are Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E. Plaintiff's Claims For Overtime In Executive Close-out Meetings Are Without Merit . . . . . . . . . . 11

III. Plaintiff's Claims For Overtime As An Associate Warden At FDC Philadelphia, PA, Are Without Merit . . . . . . . . . . 14

IV. Plaintiff's Claims For Overtime As Captain At MDC Los Angeles, CA, Are Without Merit . . . . . . . . . . 15

V. Plaintiff Is Not Entitled To Overtime For His Government Travel . . . . . . . . . . 17

VI. Plaintiff Has not Established A FEPA Violation Due To 5 U.S.C. § 5543(a) . . . . . . 20

CONCLUSION . . . . . . . . . . 26

## TABLE OF AUTHORITIES

### CASES

Ainsworth v. United States,
185 Ct. C 399 F.2d 176 (1968) .......... 24

Aletta v. United States,
70 Fed. Cl. 600 (2006) .......... 18, 19, 20

American Express Co. v. United States,
22 F.3d 1376 (Fed. Cir. 2001) .......... 22

Anderson v. Libby, Inc.,
477 U.S. 242 (1986) .......... 27

Billings v. United States,
322 F.3d 1328 (Fed. Cir. 2003) .......... 22

Bishop v. United States,
72 Fed. Cl. 766 (2006) .......... 3, 9, 11

Bishop v. United States,
2006 WL 3511979 (Dec. 4, 2006) .......... 3

Bowles v. Seminoie Rock & Sand Co.,
325 U.S. 410 (1945) .......... 22

Burich v. United States,
177 Ct. C 366 F.2d 984 (1966), cert. denied, 389 U.S. 885 (1967) .......... 24

Carlsen v. United States,
72 Fed. Cl. 782 (2006) .......... passim

Carman v. United States,
221 Ct. C 602 F.2d 946 (1979) .......... 24

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 27

Doe v. United States,
372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005) .......... passim

Florida Power & Light Co. v. United States,
375 f.3d 1117 (Fed. Cir. 2004) ........ 27

Gaines v. United States,
132 Ct. Cl. 408, 131 F. Supp. 925 (1955) ........ 5

Huaiyin Foreign Trade Corp. v. United States,
322 F.3d 1369 (Fed. Cir. 2003) ........ 22

Jane Doe v. United States,
372 F.3d 1308 (Fed. Cir. 2004) ........ 24, 25

Lee v. United States,
329 F.3d 817 (Fed. Cir. 2003) ........ 22

Lee v. Thorton,
410 U.S. 139 (1975) ........ 24

Lyons v. United States,
5 Cl. Ct. 752 (1984) ........ 24

Manning v. United States,
7 Cl. Ct. 128, 133-34 (1984) ........ 24

Rehling v. United States,
11 Cl. Ct. 334 (1986) ........ 21, 24

United States v. Marshall,
762 F.2d 419 (5th Cir. 1985) ........ 12

United States v. Wells,
262 F.3d 455 (5th Cir. 2001) ........ 12

## STATUTES

**Codes of Federal Regulations**

5 C.F.R. § 550.103 ........ 22, 23

5 C.F.R. § 550.111 ........ passim

5 C.F.R. § 550.112(b)(1)(i) ........ 2, 18

5 C.F.R. § 550.114(d) ........ 25, 26

**United States Codes**

5 U.S.C. § 5542(a) ........................................ 1, 18, 19

5 U.S.C. § 5542(b)(2) ........................................ 17

5 U.S.C. § 5543(a) ........................................ passim

5 U.S.C. § 5542(b)(2) ........................................ 19

**Legislative History**

Pub. L. 83-763, § 204, 1954 U.S.C.C.A.N. 1306, 1312 (1954) ........................................ 21

S. Rep. No. 83-1992, 83d Cong. 2d Sess., 1954 U.S.C.C.A.N. 3816, 3823 (1954) .................... 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY BISHOP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03-446C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF CRAIG CHALMERS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

In Carlsen v. United States, 72 Fed. Cl. 782 (2006), appeal pending, Fed. Cir. No. 2007-5011, this Court granted defendant's motion for summary judgment and ruled that the Bureau of Prison ("BOP") plaintiffs in that case were not entitled to compensation for overtime because they did not meet the requirements of the Federal Employees Pay Act ("FEPA"), 5 U.S.C. § 5542, and its implementing regulations. This Court's ruling was based upon the decision in Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005). In Doe, the Federal Circuit clarified the requirements for demonstrating a violation of the FEPA. The relevant Office of Personnel Management ("OPM") regulation requires that overtime be "ordered or approved . . . in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c).[1] The Federal Circuit held that plaintiffs must

[1] The relevant OPM regulation states:

> Overtime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated.

5 C.F.R. § 550.111(c) (emphasis added).

demonstrate that they were "officially ordered or approved in writing as required by the regulation" to establish a FEPA violation. Id. at 1349.

In Carlsen, 72 Fed. Cl. at 793, this Court held that, under Doe, "the only orders that lead to compensable overtime are those that explicitly order or approve overtime in writing." This Court evaluated various writings to determine whether the BOP plaintiffs met this regulatory standard. This Court held, with one exception not relevant here, that all of the various writings proffered by the plaintiffs did not meet the regulatory standard because the writings did not explicitly direct any plaintiff to work overtime. Id. at 792-98. Because the BOP employees were not officially ordered or approved in writing to work the overtime in question, this Court entered summary judgment in favor of the Government. Id.[2]

Similarly, Mr. Chalmers has not meet this regulatory standard. Therefore, summary judgment should be granted in favor of the Government, and his second amended complaint should be dismissed. In the alternative, Mr. Chalmers's claims relate solely to positions at the GS-12 or higher level of pay. His complaint should also be dismissed for that reason.

---

Small amounts of overtime, classified as de minimis, are not compensable, even if such overtime was officially ordered or approved. The pertinent regulation provides:

> If the head of a department reasonably determines that a preshift or postshift activity is closely related to an employee's principal activities, and is indispensable to the performance of the principal activities, and that the total time spent in that activity is more than 10 minutes per daily tour of duty, he shall credit all of the time spent in that activity, including the 10 minutes, as hours of work.

5 C.F.R. § 550.112(b)(1)(i)(emphasis added). See Carlsen, 72 Fed. Cl. at 798-80.

[2] The exception involved the Post Orders for Activities Lieutenant, which the Court held required two Activities Lieutenants both to be present at the change of shifts at 2:30 p.m. Id. at 799. In this respect, the Court found that former Lieutenant Tucker's overtime was de minimis in nature. Id. at 798-800.

I. Statement of Facts

The facts are drawn from the parties' proposed findings of uncontroverted fact as well as from the appendices to their briefs. No material facts are in dispute. Based on the filing date of the original complaint, Mr. Chalmers's statute of limitations date is February 25, 1997. Mr. Chalmers's claims involve positions as: (1) Associate Warden at the Federal Correctional Institution ("FCI") Otisville, NY; (2) Associate Warden at the Federal Detention Center ("FDC") Philadelphia, PA; and (3) Captain at the Metropolitan Detention Center ("MDC") Los Angeles, CA. Mr. Chalmers was either a GS-13 or a GS-14 employee during this period. Def. App. 36-39. In his motion for partial summary judgment, Mr. Chalmers addresses only his position as an Associate Warden at FCI Otisville. Because it is clear that Mr. Chalmers possesses no valid claim in any of these three positions, we address all three and request that the Court enter summary judgment in favor of defendant.

A. FCI Otisville, NY

Mr. Chalmers was an Associate Warden at FCI Otisville from about January 14, 2001 until May 30, 2003, his retirement date. Def. App. 2, 15, 26 (Dep. 5, 73, 135); Def. App. 38-39. His last day of work was May 3, 2003. Def. App. 18, 26 (Dep. 84, 135). FCI Otisville is an all-male, medium security facility that houses approximately 1,100-1,200 inmates. Bishop v. United States, 2006 WL 3511979 (Dec. 4, 2006). This institution was the subject of the Court's decisions in Lieutenant Patrick Shea's case, Bishop v. United States, 72 Fed. Cl. 766 (2006), and in Charles Carlsen's case, Carlsen v. United States, 72 Fed. Cl. 782 (2006).

Mr. Chalmers claims pre-shift overtime preparing ready for his daily activities and post-shift overtime, primarily involving close-out meetings with Warden Menifee.

B. FDC Philadelphia, PA

As an Associate Warden at FDC Philadelphia from about May 9, 1999 to January 13, 2001, Mr. Chalmers was responsible for the Programs area, which included Corrections, Unit Management, Case Management Coordinator ("CMC"), and other areas. Def. App. 11-12 (Dep. 57-58). FDC Philadelphia is a high-rise detention center for pre-trial inmates. Def. App. 12 (Dep. 58). Mr. Chalmers does not claim overtime for post-shift activities at FDC Philadelphia. Def. App. 13-14 (Dep. 65-66). He claims "about 10 minutes or so" for pre-shift activities. Def. App. 14 (Dep. 66).

C. MDC Los Angeles, CA

As Captain at MDC Los Angeles from about October 1, 1995 to May 8, 1999, Mr. Chalmers supervised approximately 14 lieutenants and roughly 150 correctional officers. Def. App. 3 (Dep. 8); Def. App. 36-37. MDC Los Angeles is a high-rise detention center for pre-trial inmates. Def. App. 3 (Dep. 8). Mr. Chalmers claims both preshift and postshift overtime as a Captain.

D. Mr. Chalmers's Claims Involving Government Travel

Mr. Chalmers went on two international trips and allegedly worked overtime hours in connection with these trips.

ARGUMENT

As in Carlsen, Mr. Chalmers points to various documents and asserts that they constitute a written order or approval to work overtime as required by the OPM regulation, 5 C.F.R. § 550.111(c). In Carlsen, this Court examined the same type of documents as are now presented by Mr. Chalmers. Thus, this Court's ruling in Carlsen is controlling of most of the issues raised by Mr. Chalmers. His claims for overtime involving Government travel are controlled by the

Federal Circuit's decision in Doe, 372 F.3d 1347.

I. Plaintiff's General Arguments Are Without Merit

A. Program Statement 3420.09, Standards of Conduct Is Not An Order To Work Overtime

Mr. Chalmers asserts that the Standards of Employee Conduct, "Employees are to obey the orders of their superiors at all times," requires him to follow oral orders, and is a sufficient written order to work overtime under Doe. Pl. Br. 10. In Carlsen, 72 Fed. Cl. at 793, this Court rejected that same argument and ruled that "a statement in a manual announcing to employees that they must follow the orders of supervisors does not amount to a written order to perform overtime."

As this Court held in Carlsen, 72 Fed. Cl. at 793, the written document at issue must "explicitly order or approve overtime in writing." In Doe, 372 F.3d at 1353, 1363, the Federal Circuit required the plaintiffs to demonstrate that the written order expressly directed them to work overtime. The Federal Circuit interpreted OPM's controlling regulation, 5 C.F.R. § 550.111(c), and held that the document must contain "an express directive to work overtime:" "We have reviewed each of these [plaintiffs'] documents, and none of them includes an express directive to work overtime." 372 F.3d at 1363.

The Federal Circuit's interpretation of the OPM regulation was based upon the interpretation of the regulation in Gaines v. United States, 132 Ct. Cl. 408, 131 F. Supp. 925, 927 (1955). In Doe, 372 F.3d at 1353, the Federal Circuit discussed the Gaines decision and quoted the Court of Claims' holding that "any claim [for overtime under FEPA] must be based upon the performance of overtime services which were expressly authorized or approved in writing by an officer or employee to whom such authority has been specifically delegated."

Further, the requirement of an express directive to work overtime derives from the purpose of 5 C.F.R. § 550.111(c). Where a written document contains an express directive to work overtime there is no question concerning whether the official directed the employee to work the overtime. Reasonable persons would agree that the employee had been directed in writing to work such overtime. Plaintiffs' argument that they may meet their burden by presenting documents that, at most, only implicitly necessitate their working overtime undercuts the regulation's obvious purpose of ensuring that an authorized official has, in fact, issued a written order directing that the employee work overtime.

The Federal Circuit's requirement of a written order that expressly directs the employee to work overtime also is consistent with the purposes of the FEPA. As the Federal Circuit explained, one of the FEPA's purposes was "to control the government's liability for overtime"and "FEPA had the dual purpose of ensuring that employees received overtime compensation while adequately controlling the government's obligation to pay overtime so as not to subject the Treasury to unanticipated liabilities." Doe, 372 F.3d at 1361. Indeed, the Federal Circuit emphasized that, in the House hearings, "Representative Miller elaborated on Congress' concern that there be adequate controls on the payment of overtime compensation: 'if I am a $6,000 executive I just can't come in the morning and say, 'I decided to stay at the office last night for 2 hours and therefore, I want $1.75 an hour.''" Id. The requirement that an employee demonstrate that he received a written order expressly directing him to work the overtime he claims fulfills FEPA's purpose of controlling the Government's liability for overtime compensation, and simultaneously ensuring that the Government official specifically ordered and authorized the overtime at issue in writing. Doe, 372 F.3d at 1353.

B. BOP Training Materials Are Not An Order To Work Overtime

Mr. Chalmers argues generally that BOP employees are trained to be careful about key control and to be on time for duty. Pl. Br. 12-13. In Carlsen, 72 Fed. Cl. at 793, this Court addressed the training materials and ruled that "they do not explicitly require work to be performed outside of normal shift hours." This ruling is controlling here also.

II. Plaintiff's Claims as Associate Warden at FCI Otisville, NY, Fail To Establish A FEPA Violation

At FCI Otisville, Mr. Chalmers was supervised by Warden Fredrick Menifee. Def. App. 15 (Dep. 73). Mr. Chalmers's scheduled shift hours were 7:30 a.m. to 4:00 p.m., Monday through Friday. Def. App. 16 (Dep. 74); Def. App. 182 (Wilner). At FCI Otisville, Mr. Chalmers is claiming 45 minutes of preshift and postshift overtime, combined. Def. App. 17 (Dep. 78). He claims 25 minutes of pre-shift overtime and 30 minutes of post-shift overtime for a daily total of 45 minutes. Def. App. 17 (Dep. 78-79). He claims that he typically arrived around 7:00 to 7:10 a.m. and that he never left before 4:30 p.m. Def. App. 17 (Dep. 78). Mr. Chalmers claims that he worked overtime by participating in close-out meetings that ran past the end of his scheduled shift. Def. App. 16 (Dep. 75).

A. The FCI Otisville Institution Supplement Is Not An Order To Work Overtime

Mr. Chalmers points to the FCI-Otisville Institution Supplement which lists the various monthly meetings at the institution, their time, and their location. Pl. Br. 16; Def. App. 43-50, 59-61. Mr. Chalmers argues that this schedule requires his attendance at the Department Head meetings and the combined Lieutenants'/Department Head meetings.

In Carlsen, 72 Fed. Cl. at 793, this Court rejected that same argument and ruled that the FCI Otisville "Institution Supplement is not addressed to specific employees . . ., and does not

mandate attendance at the listed meetings." "Nor does it direct that employees must attend meetings outside of their normal shift." Id. Those findings are controlling here also.

Moreover, the Department Head meetings and the combined Lieutenants'/Department Head meetings all were scheduled at times during Mr. Chalmers's 7:30 a.m. to 4:00 p.m. shift. Pl. App. 62-91 (Warden Menifee's Weekly Schedules). Indeed, Mr. Chalmers is not requesting overtime compensation for his attendance at these meetings. Def. App. 16 (Dep. 74). As explained below, he seeks compensation for activities he allegedly performed prior to those meetings.

B. Plaintiff's Position Description Is Not An Order To Work Overtime

Mr. Chalmers points to language in his Associate Warden position description ("PD") stating, "The incumbent is called upon to serve on, or preside over, various committee meetings." Pl. Br. 23; Pl. App. 38. Mr. Chalmers contends that this language required his attendance at Department Head meetings and the combined Lieutenants'/Department Head meetings. Pl. Br. 23.

In Carlsen, this Court considered similar arguments made by the plaintiffs and ruled that their PDs did not direct them to come in early or to stay after their shift. 72 Fed. Cl. at 795-97. The PDs also did not direct the Carlsen plaintiffs to work any amount of overtime. Id.

The same is true here. Mr. Chalmers's PD does not direct him to come in early or to stay late after the end of his shift. His PD also did not direct him to work any amount of overtime. Indeed, the PD does not even state that he is required to attend the Department Head meetings and the combined Lieutenants'/Department head meetings. Pl. App. 38.

Further, the Department Head meetings and the combined Lieutenants'/Department Head meetings all were held at times during his 7:30 a.m. to 4:00 p.m. shift. Pl. App. 62-91 (Warden

Menifee's Weekly Calendars). Indeed, as noted above, Mr. Chalmers is not requesting overtime compensation for his attendance at these meetings. Def. App. 16 (Dep. 74). As explained below, he seeks compensation for activities he allegedly performed prior to attending those meetings.

C. The Correctional Services Manual Is Not An Order To Work Overtime

Mr. Chalmers points to language in the Correctional Services Manual addressing Lieutenants' meetings. Pl. Br. 22; Pl. App. 267; Def. App. 251. The manual states that "a lieutenants' meeting will be held monthly. . . ." Pl. App. 267; Def. App. 251, 254. Plaintiff contends that this language requires his attendance at the combined Lieutenants'/Department Head meetings and the Department Head meetings. Pl. Br. 22.

In Bishop, 72 Fed. Cl. at 778, this Court rejected the argument that the Correctional Services Manual required overtime work through attendance at Lieutenants' meetings. The Court held "the manual only states that these meetings will be held" and "the manual goes on to state that 'Executive staff, Department Heads, and other interested persons should be encouraged to attend.'" Id.; Def. App. 251-52, 254. This ruling is controlling here. In addition, the Manual does not address Department Head meetings.

Moreover, the Department Head meetings and the combined Lieutenants'/Department Head meetings were held at times during Mr. Chalmers's 7:30 a.m. to 4:00 p.m. shift. Pl. App. 62-91 (Warden Menifee's Weekly Calendars). As noted above, Mr. Chalmers is not requesting overtime compensation for his attendance at these meetings. Def. App. 16 (Dep. 74). Instead, he seeks compensation for activities he allegedly performed prior to attending those meetings.

D. Plaintiff's Claims For Preparing To Attend Meetings At The Start Of His Shift Are Without Merit

At FCI Otisville, the combined Lieutenants'/Department Head meetings were scheduled

to be held approximately once a month, at 7:30 a.m. Pl. App. 62-91 (Warden Menifee's Weekly Schedules); Def. App. 43-50, 59-61. The Department Head meetings were scheduled for 8:00 a.m. Pl. App. 62-91 (Warden Menifee's Weekly Schedules); Def. App. 43-50, 59-61.

Mr. Chalmers claims that BOP managers must receive and act on information before their supervisors receive such information. Pl. Br. 20. Mr. Chalmers claims that he had to do this as an Associate Warden at FCI Otisville, and, therefore, he had to arrive at the institution before Warden Menifee arrived, and read the logs and sensitive reports before Warden Menifee received that information. Pl. Br. 20. Thus, he claimed you "had to never let the warden beat you to the institution." Id. Since Warden Menifee reported at about 7:15 a.m., Mr. Chalmers claimed that he had to be in between 7:00 and 7:15 a.m. so that he could read the material and act on it before the Warden read the material. Id.

Mr. Chalmers had 24-hour keys and typically did not have to pick up any keys or equipment at the Control Center. Def. App. 16 (Dep. 76); 181 (Wilner). Mr. Chalmers came into the front lobby area, passed through a sallyport, walked across a walkway to the front entrance to the main building, was identified by the Control Center officer, and then went through another sallyport onto the compound area. Def. App. 16 (Dep. 77). In the compound area, Mr. Chalmers claims the inmates would accost him with questions and he would make his way to the Lieutenants' office and read the Lieutenant's logs and other documents and talk to the Captain, and after that, walk to his own office. Def. App. 16 (Dep. 76-77). Mr. Chalmers contends that because of these obligations, he had to arrive at FCI-Otisville sufficiently in advance of Warden Menifee's arrival. Pl. Br. 22. Mr. Chalmers claims that he arrived at FCI

Otisville at 7:00 to 7:10 a.m. Def. App. 17 (Dep. 78).[3]

Mr. Chalmers claims that, at times, he had to attend meetings at the start of his work day, 7:30 a.m. Pl. Br. 22. On those days, Mr. Chalmers contends that because the meetings began at 7:30 a.m., he had to arrive at the institution no later than 7:00 to 7:10 a.m. Pl. Br. 23; Def. App. 17 (Dep. 78). As noted, the combined Lieutenants'/Department Head meetings were scheduled for 7:30 a.m. Pl. App. 62-91 (Warden Menifee's Weekly Schedules); Def. App. 43-50, 59-61.

Assuming for the sake of argument the truth of these assertions, Mr. Chalmers has not established that there was a written order or approval to work the overtime in question. As Mr. Chalmers acknowledged in deposition, he did not receive any instructions from Warden Menifee to arrive at the institution before his shift started. Def. App. 17 (Dep. 79). Mr. Chalmers also did not receive any instructions from Warden Menifee to arrive at the institution approximately one half hour before the start of his 7:30 a.m. shift. Def. App. 17 (Dep. 79). Warden Menifee also did not tell Mr. Chalmers how late he had to stay at the institution. Def. App. 17 (Dep. 80).

E. Plaintiff's Claims For Overtime In Executive Close-out Meetings Are Without Merit

As an Associate Warden at FCI-Otisville, Mr. Chalmers attended the Executive close-out

---

[3] At FCI Otisville, Executive Assistant Donna Hill used a stop watch and measured the time it takes to walk from the Control Center to various locations, including Mr. Chalmers's office. Def. App. 100-02. She measured 57 seconds as the time that it took her to walk at a normal pace from the Control Center, through the sallyport onto the compound and to the Associate Warden's complex, where Mr. Chalmers's office was located. Id.

Mr. Chalmers did not pick up keys or equipment at the Control Center and he is not entitled to compensation for the time he spent walking from the Control Center to his office. Def. App. 16 (Dep. 76); Def. App. 181 (Wilner). Carlsen, 72 Fed. Cl. at 798 n.33; Bishop, 72 Fed. Cl. at 780. Mr. Chalmers also is not entitled to compensation for the time that it took him to walk from the front lobby, through the first sallyport, across the walkway to the entrance of the main building, and to the Control Center. Carlsen, 72 Fed. Cl. at 798 n.33; Bishop, 72 Fed. Cl. at 780.

meetings. Def. App. 17 (Dep. 80). These meetings usually began at 3:00 p.m. on Tuesday through Friday. Def. App. 378 (Wilner); Def. App. 343 (Menifee Dep. 27); Def. App. 327 (LaForest Dep. 103); Def. App. 334 (Pl. Dep. Ex. 28); Pl. App. 62-91. The close-outs sometimes ran beyond 4:00 p.m. Def. App. 104, 106-07 (Menifee Dep. 12, 20-22); Def. App. 184-85 (Wilner).

Mr. Chalmers apparently claims that he sometimes received e-mail reminders about close-out meetings from the Warden's secretary, but has not produced any copies of such alleged e-mails. Pl. Br. 17, 19. In addition to the fact that the best evidence rule stated in Fed. R.Evid. 1002 applies to such alleged e-mails because plaintiff is attempting to prove the contents of a document, oral testimony regarding such alleged e-mails and their alleged contents is offered "to prove the truth of the matter asserted" and would be inadmissible hearsay. Fed. R. Evid. 801; United States v. Wells, 262 F.3d 455, 462-63 (5th Cir. 2001)(oral testimony as to the contents of destroyed records was inadmissible hearsay); United States v. Marshall, 762 F.2d 419, 422 (5th Cir. 1985) (witness testimony as to contents of records that were not produced at trial was inadmissible hearsay). Allowing the admission of such testimony would constitute "an end run around the rule against hearsay." Wells, 262 F.3d at 462.

Further, the only actual written documents regarding the close-out meetings are the weekly calendars of Warden Menifee. Pl. App. 62-91. Warden Menifee's secretary (Janine Banks and previously Mary Grabowski) prepared a weekly calendar for Warden Menifee and a copy of the Warden's weekly calendar was made available to the Associate Wardens. Pl. App. 62-91 (Warden Menifee's Weekly Calendars); Def. App. 185 (Wilner). The Warden's weekly calendars that were prepared by his Secretary indicated that close-outs generally were scheduled from 3:00 to 4:00 p.m., Tuesday through Friday. Pl. Br. 18; Pl. App. 62-91 (Warden Menifee's

Weekly Calendars); Def. App. 185 (Wilner).

In Carlsen, 72 Fed. Cl. at 795, this Court ruled that "e-mail reminders about and schedules of meetings do not serve as explicit orders to perform overtime, when those meetings are scheduled within the regular workday." This ruling is controlling here.

Mr. Chalmers also contends that he met the requirements of the OPM regulation because the close-out meetings ran past 4:00 p.m., their scheduled ending time, Warden Menifee was at the close-out meetings, and the Warden knew that Mr. Chalmers was working overtime. Pl. Br. 19. In Carlsen, this Court addressed this argument and ruled that "mere knowledge that employees stay beyond their shift to complete a meeting does not serve as an order or approval of overtime compensation." 72 Fed. Cl. at 795 (citing Doe III, 63 Fed. Cl. at 804).

Mr. Chalmers also contends that the BOP requires employees to remain in the institution during inmate counts, or at least discourages employees from leaving until there is a clear count of the inmates. Pl. Br. 19. In Carlsen, 72 Fed. Cl. at 785, this Court addressed this same argument and ruled that "there is no documentary evidence that [the employee] was directed to stay under these circumstances." There, as here, plaintiffs failed to cite "a rule that employees getting off shift must remain in the building until a good count is completed." Id. Mr. Chalmers has not demonstrated that there was any written order directing employees to remain in the institution during inmate counts or until a good count was completed. Def. App. 186-87. There was no written order directing employees not to leave the institution until there was a clear count of the inmates. Id.[4]

---

[4] In addition, in Patrick Shea's trial in Bishop v. United States, Fed. Cl. No. 03-446, the Court heard testimony from BOP Captains that there was no requirement at FCI Otisville that employees remain at the institution until a good count was completed.

In sum, Mr. Chalmers has failed to meet his burden of demonstrating that he received a written order explicitly directing that he work the overtime that he is claiming at FCI Otisville.

## III. Plaintiff's Claims For Overtime As An Associate Warden At FDC Philadelphia, PA, Are Without Merit

As Associate Warden at FDC Philadelphia, Mr. Chalmers was supervised by Warden John Vanyur and subsequently, by Warden Joe Smith. Def. App. 11-12 (Dep. 57-58). His scheduled hours were 7:30 a.m. to 4:00 p.m., Monday through Friday. Def. App. 13 (Dep. 62). Mr. Chalmers claims "about 10 minutes or so" of pre-shift overtime at FDC Philadelphia. Def. App. 14 (Dep. 66). As Associate Warden, Mr. Chalmers had 24-hour keys and typically did not have to pick up any keys or equipment at the Control Center. Def. App. 12 (Dep. 59). Mr. Chalmers walked through the front entrance where there was a front desk officer, went through a door into the secondary lobby and to the Control Center, and then went through the sallyport. Def. App. 12 (Dep. 59-60). Then, he walked to the elevator bank and took the elevators up to the floor where the Lieutenants' office was located. Def. App. 12 (Dep. 60). Then, he walked to the Lieutenants' office and read the Lieutenants' logs and other documents and was briefed by the Captain. Id. After that, he walked to his own office. Id.

At FDC Philadelphia, the Warden held a close-out meeting at about 3:30 p.m., which typically ended at 4:00 p.m. Def. App. 13 (Dep. 65). Mr. Chalmers typically left the institution after the close-out meeting. Def. App. 13 (Dep. 65). Mr. Chalmers is not claiming post-shift overtime at FDC Philadelphia. Def. App. 14 (Dep. 66).

Mr. Chalmers has not established a FEPA violation at FDC Philadelphia because he has not demonstrated that he received written instructions to work the overtime that he is claiming. For example, Mr. Chalmers did not receive any written instructions to come in early for his shift

at FDC Philadelphia. Def. App. 15 (Dep. 71).[5] Carlsen, 72 Fed. Cl. at 798. In addition, the overtime allegedly worked is de minimis in nature. Carlsen, 72 Fed. Cl. at 798-99.

IV. Plaintiff's Claims For Overtime As Captain At MDC Los Angeles, CA, Are Without Merit

As Captain at MDC Los Angeles, Mr. Chalmers claims 40 minutes of preshift and post shift overtime, combined. Def. App. 6 (Dep. 18). He estimates that his pre-shift overtime was 30 minutes and his post-shift overtime was 10 minutes, for a daily total of 40 minutes. Def. App. 6 (Dep. 19). As Captain, Mr. Chalmers received compensatory time for some of the overtime that he worked. Def. App. 19 (Dep. 91-92). Most of the time he did not request compensation for the overtime that he worked. Def. App. 19 (Dep. 93).

As Captain, Mr. Chalmers's scheduled hours were 6:00 a.m. to 2:30 p.m., Monday through Friday. Def. App. 4 (Dep. 11). He claims that he typically arrived at the Control Center at 5:30 a.m., and that he typically arrived at the Captain's complex, where his office was located, at 5:40 or 5:45 a.m. Def. App. 4 (Dep. 12).

Mr. Chalmers had 24-hour keys and, on arrival, stopped at the Control Center to pick up a radio. Def. App. 3 (Dep. 9). Mr. Chalmers claims that he came into the lobby, walked past a desk where the lobby officer was located, and walked over to the sallyport where the Control Center was located and picked up his radio. Def. App. 3-4 (Dep. 9-10). He then took the elevator to the third floor to the Captain's complex, which included the Lieutenants' office and the Captain's office. Def. App. 4 (Dep. 11-12). There, he turned on his computer, looked at the Lieutenants' logs and other documents, was briefed by the Morning Watch Lieutenant, and

[5] During his time at FDC Philadelphia, Mr. Chalmers also is claiming 12 hours of overtime with regard to one trip to and from London, England, on Government travel. Def. App. 14 (Dep. 66-68). We address that claim separately below.

waited for the Associate Wardens to come in and start asking him questions. Def. App. 4 (Dep. 13).

After the end of his shift, Mr. Chalmers claims that he walked from the Captain's office to the Control Center and turned in his radio, and then walked out of the institution. Def. App. 6 (Dep. 18-19). Mr. Chalmers claims that, at 2:30 p.m. (the end of his shift), he typically was in his office, finishing up activities for the day including reviewing paperwork, checking messages, making sure his desk was ready for the next day, and briefing with the Lieutenants. Def. App. 6 (Dep. 20). He claims that he typically left closer to 3:00 p.m. than to 2:30 p.m. Def. App. 7 (Dep. 22).

At MDC Los Angeles, Mr. Chalmers also claims that he worked overtime that involved an inmate who had killed an officer at the United States Penitentiary ("USP") Lompoc, CA, in April 1997, that he worked overtime involving the Mexican Mafia prison gang, and that he worked overtime on many drug introductions. Def. App. 7-9, 11 (Dep. 24-31, 54).

Mr. Chalmers claims that his Associate Warden, Darryl Johnson, and, on occasion, Warden Wayne Seifert, gave him oral instructions to come in early before the start of his 6:00 a.m. shift. Def. App. 9 (Dep. 31). However, they did not tell him to be at the institution by approximately 5:30 a.m. for his 6:00 a.m. shift. Def. App.9 (Dep. 32). Mr. Chalmers testified that the Warden and Associate Warden did not give him written instructions to come in early before his 6:00 a.m. shift. Def. App. 10 (Dep. 34). Mr. Chalmers testified that the Warden and Associate Warden did not give him written instructions that he was not to leave the institution before any set time. Id. Mr. Chalmers also testified that the Warden and Associate Warden did not give him written instructions to remain at the institution past 2:30 p.m., the end of his shift. Id. In sum, Mr. Chalmers has not established a FEPA violation at MDC Los Angeles because he

has not demonstrated that he received written instructions directing him to work the overtime that he is claiming. Id.[6]

V. Plaintiff Is Not Entitled To Overtime For His Government Travel

In deposition, Mr. Chalmers requested overtime for work performed outside of his shift while he was on Government travel. Def. App. 14-15 (Dep. 66-70). Travel accomplished during regular working hours is considered hours of work. However, for FEPA employees during the times at issue here, travel away from the official duty station during any hours on a non-workday is only considered hours of work if: 1) the travel involves the performance of work while traveling; 2) the travel is performed under arduous or unusual conditions, or 3) the travel is to or from an event which could not be scheduled or controlled administratively. 5 U.S.C. § 5542(b)(2); 5 C.F.R. § 550.112(g)(1997 and 2000). The statute provides:

> time spent in a travel status away from the official-duty station of an employee is not hours of employment unless--
>
> (A) the time spent is within the days and hours of the regularly scheduled administrative workweek of the employee, including regularly scheduled overtime hours; or
>
> (B) the travel (i) involves the performance of work while traveling, (ii) is incident to travel that involves the performance of work while traveling, (iii) is carried out under arduous conditions, or (iv) results from an event which could not be scheduled or controlled administratively, including travel by an employee to such an event and the return of such employee from such event to his or her official-duty station.

5 U.S.C. § 5542(b)(2)(emphasis added). Similarly, the applicable regulation stated:

---

[6] During his time at MDC Los Angeles, Mr. Chalmers also is claiming 49 hours of overtime with regard to one trip to and from Thailand in April 1997, on Government travel. Def. App. 14-15 (Dep. 69-70). We address that claim separately below.

> (g) *Time in travel status*. Time in travel status away from the official duty station of an employee is deemed employment only when:
> (1) It is within his regularly scheduled administrative workweek, including regular overtime work; or
> (2) The travel –
> (i) Involves the performance of actual work while traveling;
> (ii) Is incident to travel that involves the performance of work while traveling;
> (iii) Is carried out under such arduous and unusual conditions that the travel is inseparable from work; or
> (iv) Results from an event which could not be scheduled or controlled administratively, including travel by the employee to such an event and the return of the employee to his or her official-duty station.

5 C.F.R. § 550.112(g)(1997 and 2000)(emphasis added); Def. App. 258, 263-64.

In Aletta v. United States, 70 Fed. Cl. 600, 606 (2006), this Court construed the FEPA and the OPM travel regulations and held that IRS litigation attorneys who perform substantial Government travel were not entitled to overtime for such travel. The Court assumed for the sake of argument that the travel in question resulted from "an event which could not be scheduled or controlled administratively." 70 Fed. Cl. at 604, citing 5 U.S.C. § 5542(b)(2)(B)(iv); 5 C.F.R. § 550.112(g)(2)(iv). Thus, even though the travel time constituted "hours of employment," it was not compensable as overtime. Id. at 606. Rather, overtime for FEPA employees must meet the requirements of 5 U.S.C. § 5542(a) and the OPM regulation, which provides that overtime hours "may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c).

Plaintiffs in Aletta specifically argued: 1) they had an unqualified right to compensation for travel time which constituted hours of employment under 5 U.S.C. § 5542(b) and 5 C.F.R.

§ 550.112(g); 2) written approval by an authorized agency representative is not required for their overtime travel, and 3) in the alternative, a supervisor's approval of a travel voucher constituted approval of the hours of work spent traveling. 70 Fed. Cl. at 603-04. The Court rejected all of plaintiffs' arguments.

First, the Court held that the fact that the plaintiffs' travel hours may constitute "hours of employment" under FEPA, 5 U.S.C. § 5542(b)(2), does not make them compensable as authorized overtime. Id. at 604. Plaintiffs still must demonstrate a written order or approval to make the overtime compensable. Id. The Court held:

> The regulation requiring a written approval, 5 C.F.R. § 550.111(c), unquestionably applies to the FEPA section at issue, 5 U.S.C. § 5542(b), unless there exists some explicit exception stating that travel hours do not require written approval....The record is devoid of any statutory or regulatory provision excepting travel hours from the requirement for authorized written approval if it is to constitute compensable overtime.

Id. at 604-05.

Second, the Court held that a supervisor's approval of a travel voucher did not constitute approval of the overtime hours spent traveling. As the Court held, "a travel voucher approves only the travel and the reimbursement of the properly incurred travel expenses. A travel voucher is not a request by an employee, or an order or approval by an authorized official, for extra hours of work or overtime compensation for the time spent traveling." Id. at 605. Accordingly, the Court entered summary judgment for the Government. Id. at 609.

The same analysis is controlling here. Mr. Chalmers claims that he worked overtime hours on two Government trips. One trip, in about March 2000, involved overtime hours while traveling to and from London, England, to transfer a prisoner, while Mr. Chalmers was an Associate Warden at FDC Philadelphia, PA. Def. App. 14 (Dep. 66-68); Def. App. 31-32. Mr.

Chalmers testified that the Warden told him that the Bureau wanted him to go on this trip, but did not give him any written instructions. Def. App. 15 (Dep. 72). At the time, Mr. Chalmers never requested compensation for his overtime hours on this trip. Def. App. 25 (Dep. 119). Mr. Chalmers testified that he did not request compensation because he assumed it would have been denied. Def. App. 25 (Dep. 120).

The other trip, in about April 1997, involved overtime hours while traveling to and from Bangkok, Thailand, to repatriate prisoners, when Mr. Chalmers was Captain at MDC Los Angeles, CA. Def. App. 14-15 (Dep. 69-70); Def. App. 34-35. At the time, Mr. Chalmers never requested compensation for his overtime hours on this trip. Def. App. 25 (Dep. 119). Mr. Chalmers testified that he did not request compensation because he assumed it would have been denied. Def. App. 25 (Dep. 120).[7]

As noted, Mr. Chalmers has not demonstrated that he was expressly ordered in writing to work overtime with regard to these two trips. Def. App. 15 (Dep. 72). His overtime hours on the trips also were not approved in writing. Accordingly, Mr. Chalmers's overtime claims relating to Government travel are not compensable. Aletta, 70 Fed. Cl. at 603-05.

VI. Plaintiff Has Not Established A FEPA Violation Due To 5 U.S.C. § 5543(a)

Mr. Chalmers was a GS-13 or a GS-14 employee during the relevant time period, and the "Compensatory Time" provisions of Program Statement ("PS") 3000.02, the BOP Human

---

[7] The trip in about April 1997 is outside the six-year statute of limitations, as plaintiffs first asserted in the Banks amended complaint, served June 22, 2004, that the BOP required employees on Government travel to perform work outside of their regular duty hours, without compensation. See Bishop Second Amended Complaint, ¶ 17, filed July 29, 2004. On July 29, 2004, this Court allowed plaintiffs to file the amended complaint, but did not decide whether all of the allegations in the amended complaint relate back to the action's original filing date of February 25, 2003. As explained above, Mr. Chalmers's claim for that trip also fails for lack of merit.

Resource Management Manual, applied to him. Def. App. 163-64, 169-70. BOP Program Statement 3000.02 clearly provides that employees paid at the GS-12 and above levels "are required to take compensatory time off" instead of receiving overtime pay for irregular or occasional overtime work. Def. App. 163, 169. This directive was issued pursuant to 5 U.S.C. § 5543(a)(2).[8] The court has held that this statutory provision "precludes a claim for [] a [money] judgment" in circumstances where the agency head has required that an employee whose salary exceeds GS-10, step 10, take compensatory time off instead of receiving overtime pay. Rehling v. United States, 11 Cl. Ct. 334, 337 (1986), aff'd, 831 F.2d 305 (Fed. Cir. 1987) (table).[9]

Further, OPM interpreted 5 U.S.C. § 5543 and its own regulations and concluded that they preclude the payment of overtime pay for irregular or occasional overtime work by BOP employees. Def. App. 165-66. In decision letter S9600925, a BOP employee claimed overtime pay for (1) working overtime in connection with an escape from a Federal penitentiary, (2) working overtime because of an attempted escape and disturbance at the penitentiary, and (3) working overtime in connection with his attendance at the warden's close-outs. Def. App. 165-

---

[8] FEPA provides that the head of an agency may:

> provide that an employee whose rate of basic pay is in excess of the maximum rate of basic pay for GS-10 (including any applicable locality-based comparability payment under section 5304 or similar provision of law) shall be granted compensatory time off from his scheduled tour of duty equal to the amount of time spent in irregular or occasional overtime work instead of being paid for that work under section 5542 of this title.

5 U.S.C. § 5543; Def. App. 150. Section 5543(a)(2) was adopted in Pub. L. 83-763, § 204, 1954 U.S.C.C.A.N. 1306, 1312 (1954). See generally S. Rep. No. 83-1992, 83d Cong. 2d Sess., 1954 U.S.C.C.A.N. 3816, 3823 (1954).

[9] In Carlsen, 72 Fed. Cl. at 794, this Court declined to address this argument because it was unnecessary to do so.

66. The BOP asserted that its regulations require employees at grade levels of GS-12 and above to take compensatory time off in lieu of being paid for irregular or occasional overtime work. Id.[10] OPM found that the employee's claim for overtime pay was properly denied pursuant to 5 U.S.C. § 5543(a)(2) and BOP Program Statement 3000.02, which clearly provided that employees graded at GS-12 and above levels are required to take compensatory time off in lieu of being paid for irregular or occasional overtime work, and are not entitled to overtime pay. Id.

Plaintiffs have opposed our argument contending that "the statute applies to 'time spent in irregular or occasional work,' and does not apply to work which employees perform on a regular basis," or overtime which is "continuous, regular, and predictable." See Carlsen Pl. Br. 6-7. This argument should be rejected because it ignores the controlling regulatory definitions adopted by OPM, and the great deference due its interpretation of the statute.[11] Specifically, OPM has defined "irregular or occasional overtime work" as "overtime work that is not part of an employee's regularly scheduled administrative workweek." 5 C.F.R. § 550.103; Def. App. 152. "Regular overtime work" is defined as "overtime work that is part of an employee's regularly

---

[10] The only exception provided in BOP's policy is in emergencies where the warden, through appropriate channels, requests a waiver of the policy and the BOP director approves the waiver. Id. No waiver had been requested or granted in the employee's case. Id.

[11] "[A] great amount of deference is owed to an agency's interpretation of its own regulations." Lee v. United States, 329 F.3d 817, 822 (Fed. Cir. 2003); accord John Doe, 372 F.3d at 1347; Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1375 (Fed. Cir. 2003)("we accord substantial deference to the agency's interpretations of its own regulations"); Billings v. United States, 322 F.3d 1328, 1334 (Fed. Cir. 2003)(deferring to OPM's interpretation); American Express Co. v. United States, 22 F.3d 1376, 1382 (Fed. Cir. 2001) (stating that "[t]he Supreme Court has firmly established that agency interpretations of their own regulations are entitled to substantial deference"). An agency's interpretation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminoie Rock & Sand Co., 325 U.S. 410, 414 (1945). Accordingly, this Court is required to defer to OPM's regulations interpreting the FEPA.

scheduled administrative workweek." 5 C.F.R. § 550.103; Def. App. 153.[12] In adopting these regulations, OPM explained that "[u]nder OPM's definition of the term 'regularly scheduled,' it is the employee who must be scheduled to perform the work . . . and the work must be scheduled in advance of the administrative workweek as part of the employee's regularly scheduled administrative workweek to be considered 'regularly scheduled.'" 48 Fed. Reg. 3931 (Jan. 28, 1983); Def. App. 158.

It is undisputed that, as an Associate Warden at both FCI Otisville and MDC Philadelphia, Mr. Chalmers's regularly scheduled hours were Monday through Friday, 7:30 a.m. to 4:00 p.m., with a 30 minute lunch break, and that he was scheduled to work a 40 hour work-week. Def. App. 13, 16 (Dep. 62, 74); Def. App. 182 (Wilner). As Captain at MDC Los Angeles, Mr. Chalmers's regularly scheduled hours were Monday through Friday, 6:00 a.m. to 2:30 p.m., with a 30 minutes lunch break, and he was scheduled to work a 40 hour work-week. Def. App. 4 (Dep. 11). Mr. Chalmers was not scheduled in advance of the administrative workweek to work the overtime hours that he claims in this lawsuit. Id. Thus, the overtime that he claims was "not part of [his] regularly scheduled administrative workweek" and is within OPM's regulatory definition of "irregular or occasional overtime work." 5 C.F.R. § 550.103; Def. App. 152.

Thus, even assuming that Mr. Chalmers had demonstrated that he received a written order explicitly directing him to work the overtime that he is claiming in this lawsuit, Mr. Chalmers still would not have established an entitlement to overtime pay. In such a case, he would be

---

[12] The "regularly scheduled administrative workweek" is "the period within an administrative workweek . . . within which the employee is regularly scheduled to work." 5 C.F.R. § 550.103; Def. App. 153.

restricted to an award of compensatory time.

In Count III and ¶ 49(b) of the Amended Complaint, dated June 22, 2004, Mr. Chalmers requests that the Court make such an award of "compensatory time for the hours spent in [overtime] work." However, an award of compensatory time would constitute equitable relief. The Tucker Act "does not authorize a court to grant prospective equitable relief, except in very narrow circumstances not at issue here,"and this Court "does not have general equitable powers." Jane Doe v. United States, 372 F.3d 1308, 1312-13 (Fed. Cir. 2004), citing Lee v. Thorton, 410 U.S. 139, 140 (1975)("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief."). The statutory provision that an employee be awarded compensatory time for overtime, 5 U.S.C. § 5543, is "far from providing an employee with a basis for a money judgment." Rehling, 11 Cl. Ct. at 337. Instead, section 5543 "precludes a claim for such a [money] judgment in certain circumstances." Id.[13]

Plaintiffs previously have argued that BOP has "not exercised its discretion under 5 U.S.C. § 5543 to require any plaintiffs . . . to take compensatory time in lieu of overtime pay." See Carlsen Pl. Br. 7. There is no basis for this contention. Pursuant to statute, agencies have discretion to "provide that an employee whose rate of basic pay is in excess of the maximum rate

[13] Similarly, claims for annual leave, sick leave, and other types of leave are equitable in nature and beyond the Court's jurisdiction. Lyons v. United States, 5 Cl. Ct. 752 (1984); Manning v. United States, 7 Cl. Ct. 128, 133-34 (1984); Ainsworth v. United States, 185 Ct. Cl. 110, 123, 399 F.2d 176, 184 (1968)(for current employees or reinstated employees, "there is no basis for converting accumulated hours of leave into a monetary equivalent"); Carman v. United States, 221 Ct. Cl. 165, 168-69, 602 F.2d 946, 949 (1979)("if plaintiff's sick leave were the sole claim before the court, we would not have jurisdiction over it"); Burich v. United States, 177 Ct. Cl. 139, 150, 366 F.2d 984, 991 (1966)(there was no cause of action for the money equivalent of annual leave forfeited because it was not used, and there was no "basis for converting such accumulated [sick] days into a monetary equivalent presently payable), cert. denied, 389 U.S. 885 (1967).

of basic pay for GS-10 . . . shall be granted compensatory time off . . . instead of being paid for that work under section 5542." 5 U.S.C. § 5543(a)(2); Def. App. 150. BOP exercised its discretion by issuing Program Statement 3000.02. Def. App. 163, 169. Accordingly, any plaintiffs at the GS-12 level and above, who otherwise meet the stringent prerequisites of Doe, are limited to an award of compensatory time by the terms of 5 U.S.C. § 5543(a)(2) and BOP's regulation. Def. App. 150, 163, 169. However, this Court does not possess the equitable jurisdiction necessary to make such an award.

Plaintiffs have argued that, if a GS-12 BOP employee did not receive compensatory time for the overtime hours he worked, he may sue for money in lieu of the compensatory time and this Court can convert the compensatory time to an equivalent amount of money. See Carlsen Pl. Initial Opp. 27. This argument improperly assumes that the Court may exercise equitable powers to liquidate the monetary value of compensatory time and award a plaintiff money of equivalent value. Id. However, there is no statute or regulation that allows the Court to liquidate the value of compensatory time and award the equivalent in money, and this Court does not have general equitable powers. Jane Doe, 372 F.3d at 1312-13; see also n. 12, supra.

OPM regulations do not allow for the liquidation of compensatory time in this case. OPM regulations instead allow agencies to provide for forfeiture of compensatory time, where it is not used by the employee within a time limit. OPM regulations state:

> The head of a department may fix a time limit for an employee to request or take compensatory time off and may provide that an employee who fails to take compensatory time off to which he is entitled under paragraph (a) or (b) of this section before the time limit fixed, shall lose his right both to compensatory time off and to overtime pay unless his failure is due to an exigency of the service beyond his control.

5 C.F.R. § 550.114(d). This regulation plainly allows agencies to provide for forfeiture of

compensatory time. Id. BOP has done so, and fixed a time limit for an employee to use compensatory time, and BOP permits the liquidation of compensatory time in extremely narrow circumstances which are not applicable here. BOP regulations provide:

> (2) Employees exempt from coverage under FLSA will forfeit any unused compensatory time, unless:
> – the compensatory time was requested and subsequently denied and
> – the latest request was made between September 1 and September 30 of the leave year following that in which the compensatory time was earned, in which case the employee shall receive overtime pay at the overtime rate in effect when the compensatory time was earned.

Def. App. 163-64, 169-70. Pursuant to this regulation, BOP employees must meet both conditions to receive overtime pay in lieu of compensatory time: (1) the employee must make a request to use the compensatory time and management must deny that request, and (2) the employee's latest request to use the compensatory time must have been made between September 1 and 30 of the leave year following that in which the compensatory time was earned. Id. In all other cases, unused compensatory time is forfeited. Consequently, there is no statutory or regulatory basis for this Court to liquidate compensatory time and make an award of money in its place. This Court also does not possess general equitable powers to fashion such relief.

## CONCLUSION

For all these reasons and based upon our response to plaintiffs' proposed findings of undisputed fact, and our proposed findings of undisputed fact, the Court should deny Mr. Chalmers's motion for partial summary judgment and grant the Government's motion for summary judgment with regard to Mr. Chalmers. In sum, Mr. Chalmers has failed to meet his burden of demonstrating that written orders "expressly" directing him to work the overtime hours he allegedly worked were issued by an officer or employee to whom this authority was

specifically delegated. Doe, 372 F.3d at 1349, 1353, 1363; 5 C.F.R. § 550.111(c). Accordingly, summary judgment should be entered in favor of the Government. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (quoting Fed. R. Civ. P. 56(c))); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Florida Power & Light Co. v. United States, 375 F.3d 1117, 1124 (Fed. Cir. 2004).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons
December 21, 2006