IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY BISHOP, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 03-446C<br>Senior Judge Bruggink |
| UNITED STATES, | ) | |
| Defendant. | ) | |

PLAINTIFF CRAIG CHALMERS'S RESPONSE TO
DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Plaintiff Craig Chalmers, by his undersigned attorney, hereby responds to Defendant's Proposed Findings of Uncontroverted Facts.

Plaintiff disputes the following proposed findings:

FCI-Otisville

8. Actually it was Warden Menifee's opening meeting which was held at 8 a.m. Chalmers Depo. 74. Department head meetings generally began at 7:30 a.m. App. 5, 60; Supp. App. 78-79.

10. Contrary to defendant, Plaintiff Chalmers is requesting overtime for overtime work performed before he attended Department head meetings. Chalmers PFUF ¶32; App. 110.

12. The executive closeouts at FCI-Otisville began at 3 or 3:30 p.m. App. 107, 264.

13. Warden Menifee's closeouts typically lasted until at least 4:30 p.m. App. 107. The majority of the time the attendees stayed well past 4:00-until 4:15 or 4:30 p.m. App. 128.

15. Warden Menifee made it clear to Plaintiff Chalmers and other AW's "in no uncertain terms" that they were not to be late to department head meetings. App. 122-123; Chalmers PFUF ¶31. Because the lieutenants'/department head meetings began at 7:30 and plaintiff's shift also began at 7:30, before going to the meeting, he had to perform the preliminary duties

summarized in Chalmers PFUF ¶18. To do so and to prepare for the meeting, he had to arrive at the institution at 7 or 7:10 a.m. App. 110. Warden Menifee also used non-verbal communication to ensure prompt attendance: "The door closed as soon as he came in and sat down and the meeting started, and if people came in and opened the door and came in late, he would look at you. That meant you need to take corrective action to make sure that didn't happen any more." App. 125 (Chalmers Depo. 166). Warden Menifee would look unhappily at the AW in charge of the person who came in late. Id. It was called "the look." Id. Further, there was a practical reason for attending all the department head and lieutenants'/department head meetings. Before an AW went to that meeting, he or she would need to know about all unusual occurrences on the night before (or even the weekend before if it was a three-day weekend) because such issues would be discussed at the meeting and the AW would need to show at least that he was aware of the issue, if not already resolving it. See App. 109-110, 222-224, 228, 229, 235-236.

16. See No. 15 above.

17. Warden Menifee stated that Plaintiff Chalmers had to stay for the closeout meeting. App. 111.

18. The BOP did order Plaintiff Chalmers in writing to work the overtime he claims. See his Motion for Partial Summary Judgment and his Reply Brief.

MDC-Los Angeles

39. Sometimes the Warden and AW told Plaintiff Chalmers verbally to come in before 5:30, or earlier than his shift was supposed to begin at 6 a.m. Def. App. at A9.

Overseas Travel

48. Plaintiff Chalmers did not request overtime or comp. time at the time because he knew that if he asked, he would have been turned down anyhow. Def. App. 25.

Respectfully submitted,

________/s/_____________
ALAN BANOV
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036-3830
(202) 822-9699
Fax: (202) 842-9331
ab@banovlaw.com
Attorneys for Plaintiffs