EMPLOYEE NAME: Craig Chalmers CITY & STATE Milford PA

PC=PRIVATE CAR GV=GOV'T VEHICLE CC=COMMON CARRIER

| | | TIME | DATE | CODE | ODOMETER |
|---|---|---|---|---|---|
| DEPARTED FROM: | Milford PA | | 3/18 | GV | |
| ARRIVED AT: | PHL PA | | 3/18 | GV | |
| DEPARTED FROM: | PHL PA | | 3/23 | GV | |
| ARRIVED AT: | Milford | | 3/23 | GV | |

*(Additional lines on back)*

TOTAL POV CLAIMED ______ (ODOMETER READING MUST BE INDICATED)

You, as the traveler, are required to pay all tolls for the inmate driver coming and going. Ensure that you have enough change to pay tolls going to the airport and for the inmate driver's return trip to the institution and the change for the inmate's return to pick you up.

Per Program Statement 2000.2, it is the travelers responsibility to submit a completed voucher to the business office within five working days after completion of their trip. Therefore we require you to submit an itinerary within three working days from your return so that we may prepare your voucher.

Receipts are needed for the following: bus, taxi, train, plane, tolls, lodging, parking, etc.

Telephone calls are to be claimed on a *Claim for Reimbursement of Phone Calls While on TDY.*

Miscellaneous Expenses Claimed: Gas 24.50 / Cash adv fee $1.50

Regularly scheduled days off are: Sat / Sun

Please pay my Master Card in the amount of: lodging $______, air fare $______, ATM advance $______, ATM fee $______ other $______ = Total $______.

Travel settlements are now deposited directly to your bank account.

SIGNATURE: [signature] DATE: 3/27/01

PLEASE DO NOT WRITE BELOW CASHIER'S USE ONLY

*Date Recieved by Cashier* ______ *Cashier's Inititals* ______

# Travel Authorization / Advance

## 1. Voucher Information

| Local Vch No | Submit Org | Vouch Date | Ref Doc No | Preparer's Name | FMIS Upload |
|---|---|---|---|---|---|
| P001446 | P0211 | 2/8/2001 | NA | PRICE | (•) Yes No |

Type [x] Original [ ] Adv only [ ] Reissue [x] Payment Notification

Traveler: Craig Chalmers | YRegDoc: 1TA10171 | ActClass: FP021121N1

SSN: [redacted] Protected by the PRIVACY ACT | Email | FY 01 | Fund 02

## 2. Mode of Transportation Authorized

- [ ] By Common Carrier
- [x] By Gov-Furnished Auto
- [ ] By Rental Vehicle
- [ ] By Privately Owned Vehicle
- [ ] POV Determined to be Most Advantageous to Government
- [ ] Cost not to Exceed that of Common Carrier
- [ ] Based on Cost of Gov Furnished Auto
- 0.325 Mileage Rate Authorized
- Other

## 3. Mode of Subsistence Authorized

- [ ] Actual subsistence up to ____ per day

  Actual subsistence requires approval by appropriate authorizing official
- [ ] Conference Rate Perdiem
- [x] Per diem based on lodging plus meals and incidental expenses NTE GSA Location Rates
- [ ] Extended TDY (Reduced Rate)

## 4. Planned Itinerary / 5. Estimated Cost

NY OTISVIL

| | State | City | Lodging | M&IE | Days | Estimate |
|---|---|---|---|---|---|---|
| 1 | PA | Philadelphia | 118 | 46 | 5 | 679.00 |
| 2 | NA | NA | 0 | 0 | 0 | 0.00 |
| 3 | NA | NA | 0 | 0 | 0 | 0.00 |
| 4 | NA | NA | 0 | 0 | 0 | 0.00 |
| 5 | NA | NA | 0 | 0 | 0 | 0.00 |

[ ] Foreign travel.

Must be approved as required by DOJ travel regulations

Departure Date: 03/19/2001

Return Date: 03/23/2001

Transportation: 0.00

Oth Amt: 0.00

Total: 679.00

Advance Amt: 0.00

## 6. Other Authorizations

Use of Premium Class    Additional Cost:

Use of foreign flag carrier [ ] 3. Leave in conj w/travel

4. Other Description

APPROVED FOR ATM AND TRAVELERS CHECKS

## 7. Advance Disbursement

[ ] DirDep [ ] Tres [ ] Draft [ ] Cash [x] None

Draft Cashier ID: BOP144C

Address: FCI OTISVILLE

Address: PO BOX 600

City: OTISVILLE | State: NY | ZIP: 10963

Country: USA

## 8. Other Descriptive Information

Description: ASSOCIATE WARDENS TRAINING

| Program | Project | RCN (8 Alpha) | Org Mgt Field (Numeric) |
|---|---|---|---|
| | 71N | NA | |

Bill to: | Case: NA

Type Travel: [x] A. TDY [ ] B. Ext TDY [ ] C. Taxable TDY [ ] X. NA

Trav Purpose: [ ] A. Operational [x] B. Training [ ] C. Meeting/Conf [ ] X. N/A

Executive Order 13043 requires the wearing of seat belts in motor vehicles by persons on official travel.

## 9. AUTHORIZATION

You are authorized to travel at government expense in accordance with DOJ travel regulations, under the conditions outlined in this authorization.

**Authorizer**

Advance Authorized as described in Box 5

Yes / No

Fredrick Menifee (signature) Date: 2/9/01

Fredrick Menifee, Warden

**Cash / Draft Advance**

Cash Advance of:

Requested by: Date:

Received by: Date:

A voucher must be submitted within 5 workdays after travel is completed or monthly for persons in a continuous travel status.

BOP 70935

[001] P065

# Travel Voucher Summary

221893

US Dept of Justice JMD/FS/FASSG January 17, 2001

## 1. Voucher

| Local Voucher No | Submit Org | Voucher Date | Voucher Type | Ref Doc No | Preparer's Name |
|---|---|---|---|---|---|
| SAC002128 | P0211 | 07/02/2002 (03 BC) | [x] Orig [ ] ReClaim | NA | CARD |

## 2. Traveler

Name (FNF): Craig B. Chalmers

SSN: [redacted]

[x] 1. Employee [ ] 2. Contractor [ ] 3. Invitational [ ] 4. Other

Address: C/O CASHIER PO BOX 600

Address:

City: OTISVILLE State: NY Zip: 10963

Country: USA

[ ] Payment Notification Email:

## 3. Purpose

| Type Travel | Travel Purpose |
|---|---|
| [x] A. TDY | [ ] A. Operational |
| [ ] B. Ext TDY (Over 30 Days) | [x] B. Training |
| [ ] C. Taxable Ext TDY | [ ] C. Meeting/Conf |

## 4. Obligation Liquidation

[x] Final [ ] Partial [ ] NPO

| Traveler YRegDoc | RCN (8 Alpha) |
|---|---|
| 2TA10337 | NA |

## 5. Itinerary

Description: LULAC TRAINING MEETING

| Trip Began | Trip Ended | Trip GT 12 Hrs |
|---|---|---|
| 06/23/2002 | 06/27/2002 | [ ] No [x] Yes |

[x] 1. Domestic [ ] 2. O/CONUS [ ] 3. Foreign

Highest Class of Travel: [x] 0. NA [ ] 1. Coach [ ] 2. Bus Class [ ] 3. First Class

Reason for upgrade:
- [ ] 1. Coach not available
- [ ] 2. Emp Disability
- [ ] 3. Security
- [ ] 4. Foreign -no coach
- [ ] 5. Cost Savings
- [ ] 6. Paid by NonFed
- [ ] 7. Travel GT 14 hrs
- [ ] 8. Other
- [x] 9. NA

LOU SENSITIVE

| State | City | Multiple Destinations |
|---|---|---|
| TX | Houston | [ ] |

## 6. Expense Summary

FMIS Upload: (•) Yes ( ) No

**Standard Travel Expenses**

| | |
|---|---|
| Traveler Paid Transp | [illegible]4.00 |
| Lodg Total (from back) | [illegible]2.00 |
| Lodg Tax Total (from back) | 0.00 |
| M&IE Total (from back) | [illegible]2.00 |
| Mileage Total (from back) | 32.86 |
| ATM Fees (from back) | 9.90 |
| Taxi/Limo (from back) | [illegible]4.00 |
| Business Calls (from back) | 0.00 |
| Personal Calls (from back) | 0.00 |
| Parking (from back) | 0.00 |
| Car Rental | 0.00 |
| Laundry | 0.00 |

**Other Expenses**

| Item Desc | SOC | Amount |
|---|---|---|
| TOLLS | 2117 | [illegible].40 |
| CTR FEES | 2170 | [illegible]7.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |

Total Voucher: [illegible]67.16

**Disposition**

| | |
|---|---|
| Advance Repayment | 0.00 |
| Taxes Withheld Fed | 0.00 |
| Taxes Withheld State | 0.00 |
| To Travel Card | [illegible]67.16 |
| Amount to Traveler | 0.00 |

DisbMode: [x] 1. Dir Dep [ ] 2. Trea Ck [ ] 3. Draft [ ] 9. None Draft Cashier ID

## 7. Accounting Distribution

| | | Activity | | AIN | Project | | % |
|---|---|---|---|---|---|---|---|
| 02 | 02 | FP021103N1 | NA | NA | NA | NA | 100.0% |
| NA | NA | NA | NA | NA | NA | NA | 0.0% |
| NA | NA | NA | NA | NA | NA | NA | 0.0% |
| NA | NA | NA | NA | NA | NA | NA | 0.0% |
| NA | NA | NA | NA | NA | NA | NA | 0.0% |
| | | | | | | Total.. | 100.0% |

## 8. Approval

Note: Falsification of an item in an expense account works a forfeiture of claim (28 U.S.C. 2514) and may result in a fine of not more than $10,000 or imprisonment for not more than 5 years or both (18 U.S.C. 287;1d 1001).

**Traveler Sign Below**

I certify this voucher is true and correct to the best of my knowledge and belief, and that payment or credit has not been received by me.

Date: 7/3/02 Phone: [signature]

**Approving Official Sign Below**

The amounts claimed on this voucher are approved official travel expenses, which appear to be reasonable for the travel performed.

Submission Date: 7/3/02 Fredrick Menifee

Approval Date: 7/3/02

**Certifying Official Sign Below**

This voucher is certified correct and proper for payment

Date: 7/8/02 [signature]

BOP 70936

[001] P066

EMPLOYEE NAME: Craig Chalmers CITY & STATE Milford PA

PC=PRIVATE CAR GV=GOV'T VEHICLE CC=COMMON CARRIER

| | TIME | DATE | CODE | ODOMETER |
|---|---|---|---|---|
| DEPARTED FROM: Milford PA | 6:00 A | 6/23 | PC | 74545 |
| ARRIVED AT: Houston TX | 1:19 P | 6/23 | CC | |
| DEPARTED FROM: Houston TX | 10:50 A | 6/27 | CC | |
| ARRIVED AT: Milford PA | 7:00 Pm | 6/27 | PC | 74635 |

*(Additional lines on back)*

TOTAL POV CLAIMED 90 (ODOMETER READING MUST BE INDICATED)

You, as the traveler, are required to pay all tolls for the inmate driver coming and going. Ensure that you have enough change to pay tolls going to the airport and for the inmate driver's return trip to the institution and the change for the inmate's return to pick you up.

Per Program Statement 2000.2, it is the travelers responsibility to submit a completed voucher to the business office within five working days after completion of their trip. Therefore we require you to submit an itinerary within three working days from your return so that we may prepare your voucher.

Receipts are needed for the following: bus, taxi, train, plane, tolls, lodging, parking, etc.

Telephone calls are to be claimed on a *Claim for Reimbursement of Phone Calls While on TDY.*

Miscellaneous Expenses Claimed: Tolls - $5.40 shuttle - $34.00 Phone .49¢

Regularly scheduled days off are: Sun/Sat

Please pay my Master Card in the amount of: lodging $292.57 (303.34), air fare $331.00, ATM advance $300.00, ATM fee $5.90 (4.00, 9.90) other $ ~~[illegible]~~ 34.00 = Total $ ~~[illegible]~~ 978.24.

Travel settlements are now deposited directly to your bank account.

SIGNATURE: [signature] DATE: 7/2/02

PLEASE DO NOT WRITE BELOW CASHIER'S USE ONLY

*Date Recieved by Cashier* 7/2/02 *Cashier's Initials* [initials]

BOP 70937

# Travel Authorization / Advance

US Dept of Justice BOP/FSF/USG January 16, 2000

## 1. Voucher Information

| Local Vch No | Submit Org | Vouch Date | Ref Doc No | Preparer's Name | FMIS Upload |
|---|---|---|---|---|---|
| MP001287 | P0211 | 05/20/2002 | NA | PRICE | (•) Yes ( ) No |

[redacted] Vch Type [X] Original [ ] Adv only [ ] Reissue [X] Payment Notification

[redacted]ler: Craig B. Chalmers | YRegDoc: 2TA10337 | ActClass: FP021103N1

SSN [redacted] Protected by the PRIVACY ACT | Email | FY 02 | Fund 02

## 2. Mode of Transportation Authorized

- [X] By Common Carrier
- [ ] By Gov-Furnished Auto
- [ ] By Rental Vehicle
- [ ] By Privately Owned Vehicle
- [ ] POV Determined to be Most Advantageous to Government
- [ ] Cost not to Exceed that of Common Carrier
- [ ] Based on Cost of Gov Furnished Auto
- 0.365 Mileage Rate Authorized
- [ ] Other

## 3. Mode of Subsistence Authorized

- [ ] Actual subsistence up to ______ per day
- Actual subsistence requires approval by appropriate authorizing official
- [ ] Conference Rate Perdiem
- [X] Per diem based on lodging plus meals and incidental expenses NTE GSA Location Rates
- [ ] Extended TDY (Reduced Rate)

LOU

SENSITIVE

## 4. Planned Itinerary / 5. Estimated Cost

| | State | City | Lodging | M&IE | Days | Estimate |
|---|---|---|---|---|---|---|
| From | | FCI OTISVI | | | | |
| To 1 | TX | Houston | 73.00 | 42.00 | 5 | 481.00 |
| 2 | NA | NA | 0.00 | 0.00 | 0 | 0.00 |
| 3 | NA | NA | 0.00 | 0.00 | 0 | 0.00 |
| 4 | NA | NA | 0.00 | 0.00 | 0 | 0.00 |
| 5 | NA | NA | 0.00 | 0.00 | 0 | 0.00 |

[ ] Foreign travel. Must be approved as required by DOJ travel regulations

Departure Date: 6/23/2002

Return Date: 6/27/2002

Transportation: 331.00

Oth Amt: 75.00

Total: 887.00

Advance Amt: 0.00

## 6. Other Authorizations

[redacted] 1. Use of Premium Class Additional Cost: ______

2. Use of foreign-flag carrier [ ] 3. Leave in conj w/travel

[ ] 4. Other Description

APPROVED FOR $189.00 MI&E EXPENSES

## 7. Advance Disbursement

[ ] DirDep [ ] Tres [ ] Draft [ ] Cash [X] None Draft Cashier ID

Address: FCI OTISVILLE

Address: PO BOX 600

City: OTISVILLE State: NY ZIP: 10963

Country: USA

## 8. Other Descriptive Information

Description: LULAC TRAINING MEETING

| Program | Project | RCN (8 Alpha) | Org Mgt Field (Numeric) |
|---|---|---|---|
| | NA | NA | |

Bill to: | Case: NA

Type Travel: [X] A. TDY [ ] B. Ext TDY [ ] C. Taxable TDY [ ] X. NA

Trav Purpose: [ ] A. Operational [X] B. Training [ ] C. Meeting/Conf [ ] X. N/A

Executive Order 13043 requires the wearing of seat belts in motor vehicles by persons on official travel.

## 9. AUTHORIZATION

You are authorized to travel at government expense in accordance with DOJ travel regulations, under the conditions outlined in this authorization.

**Authorizer**

Advance Authorized as described in Box 5

[ ] Yes

[redacted] No Signature: Fredrick Menifee Date: 5/20/02

[redacted]thorizer: Fredrick Menifee, Warden

**Cash/Draft Advance**

Cash Advance of: ______

Requested by: ______ Date: ______

Received by: ______ Date: ______

[redacted]oucher must be submitted within 5 workdays after travel is completed or monthly for persons in a continuous travel status.

BOP 70938

U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

OPI: OGC
NUMBER: 3420.09
DATE: 2/5/99
SUBJECT: Standards of Employee Conduct

1. PURPOSE AND SCOPE. To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

- employee conduct and responsibility,
- ethics in matters involving conflicts of interest,
- post-employment restrictions,
- procurement integrity issues,
- attorney ethics, and
- outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act. Such employees are subject to certain standards and prohibitions -- some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization. Contractors and volunteers working in Bureau facilities also are expected to conduct themselves by these standards. This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment. It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

(2) An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3) An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4) An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others. Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5) An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including employees whose relatives are inmates or former inmates) must report the contact, in writing, to the CEO as soon as practicable. This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment. The employee will then be instructed as to the appropriate course of action.

(6) Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7) Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10. <u>RESPONSIVENESS</u>

a. Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents. Therefore, employees are required to remain fully alert and attentive during duty hours.

b. Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

c. Employees are to obey the orders of their superiors at all times. In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

## Standard Schedule of Disciplinary Offenses and Penalties

1. This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed. The offenses listed are not inclusive of all offenses.

2. Ordinarily, penalties imposed should be within the range of penalties provided for an offense. In aggravated cases, a penalty outside the range of penalties may be imposed. For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties. When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3. The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty. The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal. While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal. This is especially true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons. For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4. Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5. Suspension penalties on this schedule refer to calendar days. Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6. The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

7. Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8. Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 1. Unexcused or unauthorized absence of 8 hours or less. | Unauthorized absence of 8 hours or less, tardiness, leaving the job without permission. | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 6 months. |
| 2. Unexcused or unauthorized absence of between 1 and 5 consecutive workdays. | Unauthorized absence of 8 to 40 hours. | 1-day to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 1 year. |
| 3. Excessive unauthorized absence. | Unauthorized absence of more than 5 consecutive workdays. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 4. Careless workmanship or negligence resulting in spoilage or waste of materials or delay in work production. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 5. Failure or delay in carrying out orders, work assignments, or instructions of superiors. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 6. Loafing, wasting time, sleeping on the job, or inattention to duty. | Potential danger to safety of persons and/or actual damage to property is considered in determining severity of the penalty, as is potential or actual adverse impact on government operation. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 7. Insubordination. | Disobedience to constituted authorities, or refusal to carry out a proper order from any supervisor or other official having responsibility for the work of the employee. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY BISHOP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03-446C |
| | ) | Judge Bruggink |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BRIEF IN SUPPORT OF
PLAINTIFF PATRICK SHEA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN BANOV
Alan Banov & Associates
1819 L Street, N.W., Suite 700
Washington, D.C. 20036-3830
(202) 822-9699
Fax: (202) 842-9331
Attorney for Plaintiffs

OF COUNSEL:
Norberto Salinas
Alan Banov & Associates

May 20, 2005

SHEA

This form does not go back the entire time.

Q. Thank you.

Did you provide the form that we are looking at to your counsel?

A. I don't recall if I did or not. I may have.

Q. It's attached to your answers to --

A. Okay.

Q. That entire packet.

A. Yes.

Q. Were you ever directed to attend Lieutenants' meetings under Captain Haynes in writing?

A. Yes.

Q. How were you directed in writing to attend Lieutenants' meetings under Captain Haynes?

A. He sent out a e-mail to us.

Q. How many times did he send you an e-mail?

A. At least once.

Q. Do you recall an approximate

time period of this e-mail?

A. No.

Q. Was it early on when Captain Haynes became your supervisor?

A. I don't recall.

Q. Do you recall the contents of the e-mail?

A. Yes.

Q. What was the wording of the e-mail?

A. It said all Lieutenants will go to Lieutenants' meetings from now on.

Q. Who was the e-mail directed to?

A. All the Lieutenants.

Q. Do you remember the exact wording of the e-mail?

A. No.

Q. Do you still have a copy of the mail?

A. No.

Q. Were you ever compensated with either overtime pay or compensatory time for attending Lieutenants' meetings?

A. I've received compensatory time.

From: Janine A Banks
To: Lieutenants; Meetings Group
Date: 4/2/03
Time: 7:30AM - 9:00AM
Subject: Lieutenants/Department Head Meeting
Place: WCR

EX 38

From: Janine A Banks
To: Banks, Janine A; Barber, Michael W; Coe, Lawrence A; Dedes, Panagiotis W; Deetscreek, Roger W; Drumheller, Jeffrey P.; Flieger, Darla; Flynn, Patrick; Gau, William P; Gillette, William J; Gotham, Larry E; Hawthorne, Carol M; Henke, Donna M; Hill, Donna M; John M Banks; Klingman, Richard P; Knoblauch, Lenoir F; Laskin, Nochum B; Lieutenants; Martin, Marguerite; Menifee, Fredrick; Miraglia, Joseph C; Reyes, Frank; Roberts, Arthur R; Schmalz, Peter M; Tomaino, Gerard F; Vander Hey-Wright, Jayne; Walicki, Kenneth E; Watts, Mary M; Welch, Al; Wilner, Joseph M
Date: 8/6/03
Time: 7:30AM - 9:30AM
Subject: Lieutenants/Department Head Meeting
Place: WCR

CC: Dawn Skees; Dawn Wynkoop; Debbie A Tomaino; LaForest, Karen L; Lynn A Savage; Mann-Davoren, Teresa L.; Shea, Rebecca; Sperry, Danielle M; Timins, Julie A

8X 39