No. 03-446C
(Senior Judge Bruggink)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

LEROY BISHOP, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE CRAIG CHALMERS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KATHRYN A. BLEECKER
Assistant Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 307-1111

OF COUNSEL:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons

April 10, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . i

TABLE OF AUTHORITIES . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE CRAIG CHALMERS . . . . . 1

I. Plaintiff Did Not Receive A Written Order To Work Overtime . . . . . 2

II. Plaintiff Did Not Receive A Written Order To Work Overtime At Close-Outs . . 3

A. Warden Menifee's Weekly Schedules Did Not Order Overtime . . . . . 3

B. Plaintiff Has Not Demonstrated That Alleged E-Mails Ordered Overtime At Close-Outs . . . . . 4

III. Plaintiff Is Not Entitled To Overtime As Associate Warden At FDC Philadelphia 7

IV. Plaintiff Is Not Entitled To Overtime As Captain At MDC Los Angeles . . . . . 8

V. Plaintiff Is Not Entitled To Overtime For His Government Travel . . . . . 9

VI. Plaintiff's Alleged Overtime Was Irregular Or Occasional Overtime . . . . . 13

CONCLUSION . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Abrahams v. United States,
1 Cl. Ct. 305 (1982) . . . . . . . . . . 12

Adams v. United States,
471 F.3d 1321 (Fed. Cir. 2006) . . . . . . . . . . 11

Aletta v. United States,
70 Fed. Cl. 600 (2006) . . . . . . . . . . 10, 11

Amos v. United States,
13 Cl. Ct. 442 (1987) . . . . . . . . . . 14

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 1

Barth v. United States,
215 Ct. Cl. 383, 568 F.2d 1329 (1978) . . . . . . . . . . 11, 12

Bayler v. United States,
198 Ct. Cl. 331 (1972) . . . . . . . . . . 15

Bendix Corp. v. United States,
230 Ct. Cl. 507, 600 F.2d 1364 (1979) . . . . . . . . . . 6

Bobo v. United States,
37 Fed. Cl. 690 (1997) . . . . . . . . . . 15

Carlsen v. United States,
72 Fed. Cl. 782 (2006) . . . . . . . . . . 2, 4, 8

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 1

Doe v. United States,
372 F.3d 1347 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005) . . . . . . . . . . 1, 2, 15

Florida Power & Light Co. v. United States,
375 F.3d 1117 (Fed. Cir. 2004) . . . . . . . . . . 1

HUD Attorneys-Compensatory Time-Travel Outside Normal Duty Hours,
1994 WL 82038 (Comp. Gen. B-254001) (1994) . . . . . . . . . . 12

IBP, Inc. v. Alvarez,
546 U.S. 21 (2995) . . . . . . . . . . 15

Jane Doe v. United States,
372 F.3d 1308 (Fed. Cir. 2004) . . . . . . . . . . 14

Los Angeles News Service v. CBS Broadcasting, Inc.,
305 F.3d 924 (9th Cir. 2002), amended by 313 F.3d 1093 (Fed. Cir. 2002) . . . . . . . . . . 6, 7

Nicolas v. Wal-Mart Stores, Inc.,
2002 WL 506424 (4th Cir. 2002) . . . . . . . . . . 6

Phillip Jordan et al.,
72 Comp. Gen. 286 (1993) . . . . . . . . . . 12

Railroad Management Co. v. CFS Louisiana Midstream Co.,
428 F.3d 214 (5th Cir. 2005) . . . . . . . . . . 6

Rehling v. United States,
11 Cl. Ct. 334 (1986) . . . . . . . . . . 14

Riggs v. United States,
21 Cl. Ct. 664 (1990) . . . . . . . . . . 15

Telecom Technical Services Inc. v. Rolm Co.,
388 F.3d 820 (11th Cir. 2004) . . . . . . . . . . 6

United States v. Bennett,
363 F.3d 947 (9th Cir. 2004) . . . . . . . . . . 6, 7

United States v. Escobar,
674 F.2d 469 (5th Cir. 1982) . . . . . . . . . . 4

United States v. Levine,
546 F.2d 658 (5th Cir. 1997) . . . . . . . . . . 6

United States v. Marshall,
762 F.2d 419 (5th Cir. 1985) . . . . . . . . . . 5

United States v. Phifer,
230 F.3d 113 (4th Cir. 2000) . . . . . . . . . . 6

United States v. Ruffin,
575 F.2d 346 (2d Cir. 1977) . . . . . . . . . . 5

United States v. Wells,
262 F.3d 455 (5th Cir. 2001) . . . . . . . . . . 5, 6

Watts v. Quarterman,
448 F. Supp.2d 786 (W.D. Tex. 2006) . . . . . . . . . . 5

## STATUTES

**Code of Federal Regulations**

5 C.F.R. § 550.103 . . . . . . . . . . 12, 13

5 C.F.R. § 550.111 . . . . . . . . . . 10, 15

5 C.F.R. § 550.112(g)(2)(iv) . . . . . . . . . . 9, 10

**United States Code**

5 U.S.C. § 5542 . . . . . . . . . . 1, 9, 10, 11, 12

5 U.S.C. § 5543(a)(2) . . . . . . . . . . 12, 14

29 U.S.C. § 201 et seq . . . . . . . . . . 14

48 Fed. Reg. 3931 (Jan. 28, 1983) . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY BISHOP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03-446C |
| | ) | (Senior Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT RE CRAIG CHALMERS

In our motion for summary judgment relating to plaintiff Craig Chalmers, we demonstrated that Mr. Chalmers has not produced official, written orders directing him to work the overtime that he is claiming pursuant to the Federal Employees Pay Act ("FEPA"), 5 U.S.C. § 5542. Further, all of the documents identified by Mr. Chalmers did not "expressly" direct him to work the overtime he allegedly worked. Doe v. United States, 372 F.3d 1347, 1349, 1353, 1363 (Fed. Cir. 2004), cert. denied, 544 U.S. 904 (2005); 5 C.F.R. § 550.111(c). Accordingly, summary judgment should be entered in favor of the Government. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." (quoting Fed. R. Civ. P. 56(c))); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Florida Power & Light Co. v. United States, 375 F.3d 1117, 1124 (Fed. Cir. 2004). Mr. Chalmers bears the burden of proof of demonstrating that official, written orders expressly directed him to work overtime. Doe, 372 F.3d at 1349, 1353, 1363. Because Mr. Chalmers has failed to make a sufficient showing on an essential element of his case with respect to which he carries the burden of proof, the Government is entitled to

summary judgment.

I. Plaintiff Did Not Receive A Written Order To Work Overtime

In his opposition to our motion for summary judgment, plaintiff Craig Chalmers argues, as he did in his motion for partial summary judgment, that this Court should not apply the decision in Doe, 372 F.3d 1347, in determining whether Mr. Chalmers is entitled to overtime pay pursuant to the FEPA. Pl. Reply Br. 1-3.[1] Because this Court has already resolved that issue, we do not reiterate our arguments. Carlsen v. United States, 72 Fed. Cl. 782 (2006), appeal pending, Fed. Cir. 2007-5001. Mr. Chalmers also argues, as he did in his motion, that various documents, including the BOP Standards of Employee Conduct 3420.09, the training materials, the FCI Otisville Institution Supplement on meeting times, and Mr. Chalmers's position description constitute written orders to work overtime. Pl. Reply Br. 3-7. These issues also have been resolved by this Court. Carlsen, 72 Fed. Cl. at 793. The Court examined those documents and found that there was no language in them ordering employees to work overtime. Id.

Mr. Chalmers acknowledges that his real contention here is that he worked overtime prior to his shift preparing for the monthly FCI Otisville Department Head/Lieutenants' meetings, which were scheduled for 7:30 a.m., the start of his shift. Pl. Reply Br. 9-10. Mr. Chalmers accuses us of "denigrat[ing] the verbal and non-verbal pressure upon" him and other BOP employees to prepare prior to the shift for such meetings. Pl. Reply Br. 9. To the contrary, we

[1] "Pl. Reply Br." refers to Plaintiff's Reply Brief In Support of Plaintiff Craig Chalmers's Motion For Partial Summary Judgment And Brief In Opposition To Defendant's Cross-Motion For Summary Judgment, dated February 12, 2007. "Pl. Br." refers to Plaintiff's Brief In Support Of Plaintiff Craig Chalmers's Motion For Partial Summary Judgment," dated February 8, 2006. "Def. Br." refers to Defendant's Opposition To Plaintiff Craig Chalmers's Motion For Partial Summary Judgment And Defendant's Cross-Motion For Summary Judgment, dated December 22, 2006. "Def. App." refers to pages of defendant's appendix.

explicitly denied that Warden Menifee exuded any moral or other pressure upon Mr. Chalmers or others to work overtime prior to the start of the shift. See Def. Responses to Pl. PFUF Nos. 10, 11, 12, 14.

II. Plaintiff Did Not Receive A Written Order To Work Overtime At Close-Outs

The parties agree that, as an Associate Warden at FCI-Otisville, Mr. Chalmers attended the Executive close-out meetings, Def. App. 17 (Dep. 80), that the close-outs usually began at 3:00 p.m. on Tuesday through Friday, Def. App. 378 (Wilner); Def. App. 343 (Menifee Dep. 27); Def. App. 327 (LaForest Dep. 103); Def. App. 334 (Pl. Dep. Ex. 28); Pl. App. 62-91, and that the close-outs sometimes ran beyond 4:00 p.m. Def. App. 104, 106-07 (Menifee Dep. 12, 20-22); Def. App. 184-85 (Wilner). However, Mr. Chalmers's claim for overtime compensation for close-outs should be denied because he has failed to demonstrate an official, written order to work overtime.

A. Warden Menifee's Weekly Schedules Did Not Order Overtime

In his opening brief, Mr. Chalmers contended that Warden Menifee's weekly schedules were written orders to work overtime. Pl. Br. 18-19. He contended that, "the directive to attend closeouts was in writing" and the Warden's secretary "would send out announcements that closeouts were scheduled for 3-4:00 p.m.," referencing the same weekly schedules of Warden Menifee prepared by his secretary. Pl. Br. 18, 19. Mr. Chalmers, in his proposed findings of uncontroverted fact, also asserted that the Warden's secretary sent out announcements that close-outs were scheduled for 3:00-4:00 p.m., and again referenced Warden Menifee's weekly schedules. Pl. PFUF Nos. 55-56.

The parties agree that Warden Menifee's secretary (Janine Banks and previously Mary Grabowski) prepared a weekly calendar for Warden Menifee and a copy of the Warden's weekly

calendar was made available to the Associate Wardens. Pl. App. 62-91 (Warden Menifee's Weekly Calendars); Def. App. 185 (Wilner); Pl. Br. 18. The parties also agree, and the records demonstrate, that Warden Menifee's weekly calendars indicated that close-outs generally were scheduled from 3:00 to 4:00 p.m., Tuesday through Friday. Pl. Br. 18; Pl. App. 62-91 (Warden Menifee's Weekly Calendars); Def. App. 185 (Wilner).

In Carlsen, this Court considered these very same weekly calendars and ruled that "schedules of meetings do not serve as explicit orders to perform overtime, when those meetings are scheduled within the regular workday." 72 Fed. Cl. at 795. In Warden Menifee's weekly schedules, close-outs generally were scheduled from 3:00 to 4:00 p.m., and were not scheduled after 4:00 p.m. Pl. App. 62-91 (Warden Menifee's Weekly Calendars); Def. App. 185 (Wilner). Thus, Warden Menifee's weekly schedules were not a written order to work overtime. Carlsen, 72 Fed. Cl. at 795.

Mr. Chalmers argues that we contended that Warden Menifee's weekly schedules were not admissible, based upon the rule against hearsay and the best evidence rule. Pl. Reply Br. 10-11. That was not our argument. We did not object to the Court's consideration of Warden Menifee's weekly schedules and those documents were contained in Plaintiff's Appendix 62-91; further, the Government relied upon Warden Menifee's schedules in its brief. Def. Br. 12-13.

B. Plaintiff Has Not Demonstrated That Alleged E-Mails Ordered Overtime At Close-Outs

Mr. Chalmers argues that directives to attend FCI Otisville close-outs also were in writing through e-mail reminders. Pl. Reply Br. 11, 13. However, Mr. Chalmers in his proposed findings of undisputed fact and appendix provided no such evidence of alleged e-mails. Notwithstanding the fact that Mr. Chalmers was employed as an Associate Warden at FCI

Otisville at the time he filed this lawsuit on February 25, 2003, and until the time that he retired on May 30, 2003, Mr. Chalmers has not produced any such alleged e-mails.

In our opposition, we objected to the admission of oral testimony about the contents of alleged e-mails regarding closeouts based upon the best evidence rule and the rule against hearsay. Def. Br. 12. Oral testimony regarding the contents of such alleged e-mails that had not been produced would be proffered "to prove the truth of the matter asserted," i.e., what the e-mail, in fact, said, and would be inadmissible hearsay. Fed.R.Evid. 801; United States v. Wells, 262 F.3d 455, 462-63 (5th Cir. 2001) (oral testimony as to the contents of destroyed records was inadmissible hearsay); United States v. Marshall, 762 F.2d 419, 422 (5th Cir. 1985) (oral testimony as to the contents of records not introduced at trial was inadmissible hearsay); United States v. Escobar, 674 F.2d 469, 474 (5th Cir. 1982) (officer's testimony as to what he learned from computer was inadmissible hearsay); United States v. Ruffin, 575 F.2d 346, 357 (2d Cir. 1977) (reversing conviction because witness's testimony as to the contents of documents was inadmissible hearsay); Watts v. Quarterman, 448 F. Supp.2d 786, 810 (W.D. Tex. 2006) (testimony as to what the witness read in documents which had never been proffered for admission into evidence was inadmissible hearsay).

In Marshall, the Government had to prove theft of Government lawn movers and relied upon a Government investigator's testimony that, based upon her review of the Army and Air Force Exchange Service records, lawn movers were missing from the store. The Government failed to introduce into evidence the store's business records. The Government argued that the investigator's hearsay testimony was admissible pursuant to Fed.R.Evid. 803(6). The Fifth Circuit rejected that argument and held that the trial court erred in allowing "hearsay testimony as to the contents of documents that were not themselves introduced into evidence." Id. at 428.

In Wells, 262 F.3d at 460-61, the Government introduced oral testimony as to the contents of drug ledgers that had been destroyed and contented that such hearsay testimony was admissible under Fed.R.Evid. 803(6) and Rule 1004. The Fifth Circuit rejected that argument, ruling that the testimony as to the contents of the records was inadmissible hearsay, and noted that the Government had not cited a single case in which oral testimony as to the contents of records was allowed pursuant to Rule 803(6). Id. at 461. The Fifth Circuit held that "testimony with respect to the contents of the ledgers was hearsay." Id. at 462. Allowing the admission of such testimony would constitute "an end run around the rule against hearsay." Id. Accordingly, oral testimony about the contents of an e-mail that Mr. Chalmers has failed to produce would be inadmissible hearsay.

We also objected to testimony about the contents of alleged e-mails regarding close-outs based upon the best evidence rule, because the contents of the alleged documents is at issue. The best evidence standard incorporated in Fed.R.Evid. 1002 applies whenever a litigant attempts to prove the contents of a document. Railroad Management Co. v. CFS Louisiana Midstream Co., 428 F.3d 214, 217 (5th Cir. 2005) (exclusion of testimony as to contents of alleged assignment based upon Rule 1002 was not an abuse of discretion); United States v. Bennett, 363 F.3d 947, 953-54 (9th Cir. 2004) (admission of oral testimony as to contents of records and failure to produce actual Global Positioning System records was a violation of Rule 1002 and prejudicial); Telecom Technical Services Inc. v. Rolm Co., 388 F.3d 820, 830 (11th Cir. 2004); Nicolas v. Wal-Mart Stores, Inc., 2002 WL 506424 (4th Cir. 2002); Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924, 925 (9th Cir. 2002), amended by 313 F.3d 1093 (Fed. Cir. 2002); United States v. Phifer, 230 F.3d 113, 120-21 (4th Cir. 2000); United States v. Levine, 546 F.2d 658, 668 (5th Cir. 1997); Bendix Corp. v. United States, 230 Ct. Cl. 507, 600 F.2d

1364, 1371-72 (1979). The best evidence rule is applicable, because Mr. Chalmers is attempting to prove "the contents of a writing", i.e., alleged e-mail. Id. Similarly, in Bennett, 363 F.3d at 953-54, the Ninth Circuit held that the testimony of a Government witness about what a writing said violated the best evidence rule because the Government was attempting to prove the contents of the writing. As the Ninth Circuit held: "This is precisely the kind of situation in which the best evidence rule applies." Id. at 953. Similarly, in Los Angeles News Service, 305 F.3d at 935, the Ninth Circuit held that testimony about what a label said "was inadmissible under the best evidence rule." Accordingly, testimony about the contents of an e-mail that Mr. Chalmers failed to introduce would be inadmissible pursuant to both the rule against hearsay and Rule 1002.

Mr. Chalmers argues, without any evidence, that e-mails regarding close-outs "are in the possession of the opponent," and, therefore, oral testimony as to the contents of alleged e-mails is sufficient. Pl. Br. 13. The Government has searched its records and does not have e-mails regarding Warden Menifee's close-outs. Contrary to Mr. Chalmers's argument, there has not been testimony from Mr. Chalmers or others that e-mails were sent to order Associate Wardens to attend Warden Menifee's close-outs. Pl. Br. 13. Mr. Chalmers did not testify that he received e-mails ordering him to attend close-outs. His assertion also was limited to his receipt of Warden Menifee's weekly calendars. Pl. PFUF Nos. 55-56.

III. Plaintiff Is Not Entitled To Overtime As Associate Warden At FDC Philadelphia

Mr. Chalmers claims "about ten minutes or so" of pre-shift overtime and no post-shift overtime as an Associate Warden at FDC Philadelphia. Def. App. 14 (Dep.66). As Associate Warden, Mr. Chalmers had 24-hour keys and did not have to pick up any keys or equipment at the Control Center. Def. App. 12 (Dep. 59). Mr. Chalmers does not assert that he received any

written orders to work such pre-shift overtime at FDC Philadelphia. Indeed, Mr. Chalmers testified that he did not receive any written instructions to come in early for his shift at FDC Philadelphia. Def. App. 15 (Dep. 71). Carlsen, 72 Fed. Cl. at 798. In addition, the overtime allegedly worked at FDC Philadelphia is de minimis in nature. Carlsen, 72 Fed. Cl. at 798-99.

IV. Plaintiff Is Not Entitled To Overtime As Captain At MDC Los Angeles

As Captain, Mr. Chalmers's scheduled hours were 6:00 a.m. to 2:30 p.m., Monday through Friday. Def. App. 4 (Dep. 11). He claims that he typically arrived at the Control Center at 5:30 a.m., and arrived at the Captain's complex, where his office was located, at 5:40 or 5:45 a.m. Def. App. 4 (Dep. 12). Mr. Chalmers had 24-hour keys and, on arrival, stopped at the Control Center to pick up a radio. Def. App. 3 (Dep. 9).

Mr. Chalmers's overtime claim as Captain fails for lack of a written order to work the overtime that he claims. Mr. Chalmers claims that his Associate Warden, Darryl Johnson, and, on occasion, Warden Wayne Seifert, gave him oral instructions to come in early before the start of his shift. Def. App. 9 (Dep. 31). However, they did not tell him to be at the institution by approximately 5:30 a.m. for his 6:00 a.m. shift. Def. App. 9 (Dep. 32). Mr. Chalmers testified that the Warden and Associate Warden did not give him written instructions to come in early before his shift. Def. App. 10 (Dep. 34). Mr. Chalmers also testified that the Warden and Associate Warden did not give him written instructions that he was not to leave the institution before any set time. Id. Mr. Chalmers also testified that the Warden and Associate Warden did not give him written instructions to remain at the institution past 2:30 p.m., the end of his shift. Id. Therefore, Mr. Chalmers has not established a FEPA violation, because he has not demonstrated that he received written instructions directing him to work the overtime that he is claiming. Id.

V. Plaintiff Is Not Entitled To Overtime For His Government Travel

Mr. Chalmers requests overtime compensation for: (1) alleged overtime associated with Government travel in April 1997 to and from Bangkok to repatriate prisoners;[2] and (2) alleged overtime associated with Government travel in March 2000 to and from London, England, to escort an offender to the Metropolitan Correctional Center ("MCC") New York.[3]

In response to our motion, Mr. Chalmers contends that, with regard to the London trip, Warden Hasty's letter commending his work on that trip shows that "BOP authorities ordered and approved it." Pl. Br. 18. Mr. Chalmers also argues that "it would be impossible for any federal employee to travel, particularly to another country, without a written travel order." Pl. Br. 18-19.

However, Mr. Chalmers has not demonstrated that he received a written order to work overtime with regard to the Bangkok trip in April 1997 or the London trip in March 2000. A document authorizing an employee's Government travel is not an order directing the employee to work overtime. Warden Hasty's letter also does not contain any language stating that Mr. Chalmers was ordered to travel as an escort on the March 2000 London trip or that he was

---

[2] The trip in about April 1997 is outside the six-year statute of limitations, as plaintiffs first asserted in the Banks amended complaint, served June 22, 2004, that the BOP required employees on Government travel to perform work outside of their regular duty hours, without compensation. See Bishop Second Amended Complaint, ¶ 17, filed July 29, 2004. On July 29, 2004, this Court allowed plaintiffs to file the amended complaint, but did not decide whether all of the allegations in the amended complaint relate back to the action's original filing date of February 25, 2003.

[3] The parties also dispute the amount of overtime hours claimed by Mr. Chalmers for these trips. In his brief, Mr. Chalmers asserts that he "claims overtime pay for the 22 hours going over [to London] and 27 hours of unpaid overtime returning." Pl. Reply Br. 18. However, at deposition, Mr. Chalmers testified that he was claiming 12 hours of overtime with regard to the trip to and from London. Def. App. 14 (Dep. 66-68).

ordered to work overtime. With regard to the March 2000 trip to London, Mr. Chalmers received a copy of the March 7, 2000, "Memorandum For Staff Escorts" issued by Jeff George, the BOP correctional program specialist who made the travel arrangements for escorts on that trip, including Mr. Chalmers. Def. App. 287, 336-37. Mr. George's memorandum provided information and instructions, but did not direct the performance of any overtime. Def. App. 287, 336-37. Mr. George also did not have the authority to direct any BOP employee to work overtime. Def. App. 287. Further, Mr. Chalmers did not want to travel as an escort for offenders to and from foreign countries, he was not required to do so. Def. App. 287.

Mr. Chalmers argues that Aletta v. United States, 70 Fed. Cl. 600, 606 (2006), is distinguishable because it involved only travel within the United States, the plaintiffs, IRS lawyers, worked flexible schedules, and the claimed overtime hours were nothing like Mr. Chalmers's overtime and overseas travel. Pl. Br. 19. These are asserted factual distinctions without legal significance.

In Aletta, 70 Fed. Cl. 600, the Court construed the FEPA and the OPM travel regulations and held that IRS litigation attorneys who performed substantial Government travel were not entitled to overtime for such travel. The Court assumed for the sake of argument that the travel in question resulted from "an event which could not be scheduled or controlled administratively." 70 Fed. Cl. at 604, citing 5 U.S.C. § 5542(b)(2)(B)(iv); 5 C.F.R. § 550.112(g)(2)(iv). Thus, even though the travel time was assumed to constitute "hours of employment," it was not compensable as overtime. Id. at 606. Rather, overtime for FEPA employees must meet the requirements of 5 U.S.C. § 5542(a) and the OPM regulation, which provides that overtime hours "may be ordered or approved only in writing by an officer or employee to whom this authority has been specifically delegated." 5 C.F.R. § 550.111(c).

The Court held that the fact that the plaintiffs' travel hours may constitute "hours of employment" pursuant to FEPA, 5 U.S.C. § 5542(b)(2), does not make them compensable as authorized overtime. Aletta, 70 Fed. Cl. at 604. Plaintiffs still must demonstrate a written order or approval to make the overtime compensable. Id. at 604-05.

Second, the Court held that a supervisor's approval of a travel voucher did not constitute approval of the overtime hours spent traveling. As the Court held, "a travel voucher approves only the travel and the reimbursement of the properly incurred travel expenses. A travel voucher is not a request by an employee, or an order or approval by an authorized official, for extra hours of work or overtime compensation for the time spent traveling." Id. at 605. The Court entered summary judgment for the Government. Id. at 609.

The same analysis is controlling here. A memorandum authorizing a BOP employee to travel, even to travel abroad, authorizes only the travel in question; it is not an order by an authorized official "for extra hours of work or overtime compensation for the time spent traveling." Aletta, 70 Fed. Cl. at 605. Here, Mr. George's memorandum for the escorts informed them that they had been authorized to travel, but it did not direct any overtime work, and Mr. George had no authority to direct any BOP employee to work overtime hours. Def. App. 287, 336-37. Accordingly, Mr. Chalmers has failed to demonstrate that he received an official written order directing him to work overtime while on Government travel, and his overtime claims for Government travel are not compensable. Aletta, 70 Fed. Cl. at 603-05.

The Government disputes Mr. Chalmers's assertion that he met the other requirements set forth in 5 U.S.C. § 5542(b)(2)(B) and 5 C.F.R. § 550.112(g)(2). See Def. Br. 17-18. The general rule is that "travel time is not considered hours of employment and is not compensable." Barth v. United States, 215 Ct.Cl. 383, 568 F.2d 1329, 1333 (1978). See also Adams v. United States,

471 F.3d 1321 (Fed. Cir. 2006) (employees driving time in Government-owned vehicles was not compensable under Fair Labor Standards Act). For example, in Abrahams v. United States, 1 Cl. Ct. 305 (1982), BOP employees who rode a BOP boat to and from their institution sought overtime pay pursuant to the FEPA for the time they spent traveling on the boat. This Court denied the claim finding that "the travel time on the boat did not constitute work per se." Id. at 309.

Congress has provided "narrowly drawn statutory exceptions" to the rule that travel time is not hours of employment. Barth, 568 F.2d at 1332. In Barth, the Court of Claims held that the exception for travel which "results from an event which could not be scheduled or controlled administratively," 5 U.S.C. § 5542(b)(2)(B)(iv), is narrow and there must be a "total lack of Government control." Id.

There are few circumstances in which the event giving rise to the travel is totally beyond administrative scheduling or control. If the event giving rise to the travel is not beyond administrative scheduling or control, the travel is not hours of employment and is not compensable. Barth, 568 F.2d at 332; HUD Attorneys-Compensatory Time-Travel Outside Normal Duty Hours, 1994 WL 82038 (Comp. Gen. B-254001) (1994) (denying overtime claims of agency attorneys who must travel outside of their normal duty hours); Phillip Jordan et al., 72 Comp. Gen. 286 (1993) (denying overtime claims by agency employees who traveled to witness acceptance tests scheduled and conducted by contractors because contractors were required to give agency advance notice of the testing dates).

Here, Mr. Chalmers's alleged overtime did not result from "event[s] which could not be scheduled or controlled administratively," 5 U.S.C. § 5542(b)(2)(B)(iv), because the agency had some control over the travel. Def. App. 285-87. Mr. Chalmers's alleged overtime also was not

unusually arduous. Abrahams, 1 Cl. Ct. at 308. However, the issue of whether Mr. Chalmers received a written order to perform overtime work while traveling is plain, and the Court may decide our motion for summary judgment upon that basis alone.

VI. Plaintiff's Alleged Overtime Was Irregular or Occasional Overtime

Mr. Chalmers was a GS-13 or a GS-14 employee, and the "Compensatory Time" provisions of Program Statement ("PS") 3000.02, the BOP Human Resource Management Manual, applied to him. Def. App. 163-64, 169-70. BOP Program Statement 3000.02 clearly provides that employees paid at the GS-12 and above levels "are required to take compensatory time off" instead of receiving overtime pay for irregular or occasional overtime work. Def. App. 163, 169.

Mr. Chalmers opposes our argument contending that 5 U.S.C. § 5543(a)(2), by its terms, applies to "time spent in irregular or occasional work," and "does not apply to overtime which employees perform on a regular basis," or overtime which is "continuous, regular, and predictable." Pl. Reply Br. 20. This argument should be rejected because it ignores the controlling regulatory definitions adopted by OPM, and the great deference due its interpretation of the statute. Doe, 372 F.3d at 1347.

OPM has defined "irregular or occasional overtime work" as "overtime work that is not part of an employee's regularly scheduled administrative workweek." 5 C.F.R. § 550.103; Def. App. 152. "Regular overtime work" is defined as "overtime work that is part of an employee's regularly scheduled administrative workweek." 5 C.F.R. § 550.103; Def. App. 153.[4] OPM also

[4] The "regularly scheduled administrative workweek" is "the period within an administrative workweek . . . within which the employee is regularly scheduled to work." 5 C.F.R. § 550.103; Def. App. 153.

explained that, "[u]nder OPM's definition of the term 'regularly scheduled,' it is the employee who must be scheduled to perform the work . . . and the work must be scheduled in advance of the administrative workweek as part of the employee's regularly scheduled administrative workweek to be considered 'regularly scheduled.'" 48 Fed. Reg. 3931 (Jan. 28, 1983); Def. App. 158.

It is undisputed that, as an Associate Warden at FCI Otisville and at FDC Philadelphia, Mr. Chalmers's regularly scheduled hours were Monday through Friday, 7:30 a.m. to 4:00 p.m., with a 30 minute lunch break, and he was scheduled to work a 40 hour work-week. Def. App. 13, 16 (Dep. 62, 74); Def. App. 182 (Wilner). As Captain at MDC Los Angeles, Mr. Chalmers's regularly scheduled hours were Monday through Friday, 6:00 a.m. to 2:30 p.m., with a 30 minute lunch break, and he was scheduled to work a 40 hour work-week. Def. App. 4 (Dep. 11). Mr. Chalmers was not scheduled in advance of the administrative workweek to work overtime. Id. Thus, the overtime that he claims was "not part of [his] regularly scheduled administrative workweek" and is within OPM's regulatory definition of "irregular or occasional overtime work." 5 C.F.R. § 550.103; Def. App. 152.

Even assuming that Mr. Chalmers had demonstrated that he received a written order directing him to work the overtime he is claiming, Mr. Chalmers still would not have established an entitlement to overtime pay. In such a case, he would be restricted to an award of compensatory time. However, an award of compensatory time would constitute equitable relief, and this Court does not possess the power to issue such an order. Jane Doe v. United States, 372 F.3d 1308, 1312-13 (Fed. Cir. 2004). The statutory provision that an employee be awarded compensatory time for overtime, 5 U.S.C. § 5543, is "far from providing an employee with a basis for a money judgment." Rehling v. United States, 11 Cl. Ct. 334, 337 (1986). Instead,

section 5543 "precludes a claim for such a [money] judgment in certain circumstances." Id.

Mr. Chalmers contends that this Court should ignore the controlling OPM regulations and require overtime pay because Mr. Chalmers's overtime allegedly involves preliminary and postliminary activities that was closely related to, and part and parcel of, the principal work BOP regularly assign employees. Pl. Br. 20, citing IBP, Inc. v. Alvarez, 546 U.S. 21 (2995); Bobo v. United States, 37 Fed. Cl. 690, 693 (1997); Riggs v. United States, 21 Cl. Ct. 664, 676-78 (1990); Amos v. United States, 13 Cl. Ct. 442, 4490450 (1987); Bayler v. United States, 198 Ct. Cl. 331, 337-38 (1972). This argument is another end run around Doe, and the controlling OPM regulations. Further, the cases cited by plaintiff all involve application of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., which involves different standards. FEPA employees must demonstrate that they received a written order to work the overtime that they are claiming.

## CONCLUSION

For all these reasons and those in our opening brief, and based upon our response to plaintiffs' proposed findings of undisputed fact, and our proposed findings of undisputed fact, the Court should deny Mr. Chalmers's motion for partial summary judgment and grant the Government's motion for summary judgment with regard to Mr. Chalmers.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
ERIKA TURNER
Assistant General Counsel
Bureau of Prisons
April 10, 2007