Table of Contents of Appendix


| | Page |
|---|---|
| Declaration of Jeff George | 285 |
| Exhibit A, Program Statement, Transfer of Offenders to or from Foreign Countries | 289 |
| Exhibit B, Jeff George's Checklist for Treaty Transfer Trips | 335 |
| Exhibit C, March 7, 2000 Memorandum for Staff Escorts from Jeff George | 336 |
| Exhibit D, March 11-15, 2000 England Prisoner Trip itinerary | 338 |
| Exhibit E, Other Documents Prepared by Jeff George re March 2000 trip | 339 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY BISHOP, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 03-446C (Senior Judge Bruggink) |

DECLARATION OF JEFF GEORGE

I, Jeff George, do declare as follows:

1. I am a Discipline Hearing Officer in the North Central Regional Office of the Bureau of Prisons ("BOP").

2. From about October 1997 to February 2001, I was a Correctional Programs Specialist in the office of Correctional Programs, in the BOP Central Office. I reported to Claudia Hill, the Assistant Administrator for Correctional Programs. Subsequently, I reported to Valerie Rappold, who replaced Ms. Hill. From about October 1994 to about November 1999, John Chreno was the Administrator for Correctional Programs. J. Paul Horner replaced Mr. Chreno.

3. As a Correctional Programs Specialist, I was involved with the process by which offenders were transferred to and from foreign countries pursuant to statute and the BOP Program Statement, Transfer of Offenders to and from Foreign Countries, a copy of which is attached to my declaration. Exhibit A.

4. A copy of the check list that I used in my work relating to the transfer of offenders to and from foreign countries is attached to my declaration. Exhibit B.

5. My office maintained information on BOP employees who had personal or official passports enabling them to travel to and from foreign countries and assist with the transfer of offenders to and from foreign countries.

6. I coordinated the travel of offenders and also BOP escort personnel in order to bring American citizens back to the United States to serve their sentences in BOP institutions.

7. To facilitate the transfer of offenders, I would obtain names of BOP employees who might be able to serve as escorts from Assistant Administrator Claudia Hill and from Valerie Rappold when she assumed Ms. Hill's position. I would contact the Warden where the potential escort was stationed or at times the BOP Regional Director and request their concurrence with the employees serving as escorts on a particular trip.

8. I also would contact the BOP employees themselves and determine whether they actually were available and able to travel and serve as escorts at the time in question.

9. With regard to Mr. Chalmers's trip in March 2000 to London, England, to transfer one American offender from England to the United States, I was given Mr. Chalmers's name as a potential escort for that trip. I would have contacted Mr. Chalmers to give him information about the trip and to obtain

information, including whether he had a valid passport and his passport number. I would have told Mr. Chalmers that the trip involved the transfer of one offender. I would have asked Mr. Chalmers whether he had an airport preference. I would have worked with BOP travel agents to set up the travel arrangements for Mr. Chalmers and the other escorts. Once the travel arrangements were made by the BOP travel agency, I would have provided Mr. Chalmers and the other escorts with their itinerary and tickets or ticket information.

10. No one was required to serve as an escort in the transfer of offenders to and from foreign countries. If BOP employees did not wish to travel as escorts of offenders, they were not required or expected to do so. For example, if Mr. Chalmers had said that he did not wish to go on the London trip, he would not have been authorized to travel on that trip.

11. As a Correctional Program Specialist, I did not have any authority to direct a BOP employee to work overtime. I did not request Mr. Chalmers to work any overtime with regard to the March 2000 London trip.

12. A copy of the March 7, 2000 Memorandum For Staff Escorts attached to my declaration was provided to the escorts, Warden Hasty, Mr. Chalmers, and Mr. McMillan. Exhibit C. I prepared this memorandum.

13. A copy of the flight information attached to my declaration was probably also provided to the escorts, Warden Hasty, Mr. Chalmers, and Mr. McMillan. Exhibit D.

13. Additional documents that I prepared with regard to the March 2000 transfer of the one American offender are attached to my declaration. Exhibit E. The name of the offender and passport numbers have been redacted from these documents.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4/10/07

Jeff George

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5140.29
**DATE:** May 21, 1997
**SUBJECT:** Transfer of Offenders to or from Foreign Countries

1. **[<u>PURPOSE AND SCOPE</u> §527.40. Public Law 95-144 (18 U.S.C. 4100 et seq.) authorizes the transfer of offenders to or from foreign countries, pursuant to the conditions of a current treaty which provides for such transfer. 18 U.S.C. 4102 authorizes the Attorney General to act on behalf of the United States in regard to such treaties. In accordance with the provisions of 28 CFR 0.96b, the Attorney General has delegated to the Director of the Bureau of Prisons, and to designees of the Director, the authority to receive custody of, and to transfer to and from the United States, offenders in compliance with the conditions of the treaty.]**

28 CFR 0.96b provides that, "The Director of the Bureau of Prisons and officers of the Bureau of Prisons designated by him are authorized to receive custody of offenders and to transfer offenders to and from the United States of America under a treaty as referred to in Public Law 95-144; to make arrangements with the States and to receive offenders from the States for transfer to a foreign country; to act as an agent of the United States to receive the delivery from a foreign government of any person being transferred to the United States under such a treaty; to render to foreign countries and to receive from them certifications and reports required under a treaty; and to receive custody and carry out the sentence of imprisonment of such a transferred offender as required by that statute and any such treaty."

2. <u>PROGRAM OBJECTIVES</u>. The expected results of this program are:

a. All inmates will be notified of the "Treaty Transfer" program during the Admission and Orientation Program (A&O).

b. All appropriate documents will be obtained and signed regarding the receipt and/or transfer of an inmate.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

GOVERNMENT EXHIBIT A

c. All inmate transfers will be voluntary and subject to both countries' approval.

d. An inmate with a committed fine will not be transferred to the country of that inmate's citizenship without the consent of the United States Court imposing the fine.

e. Eligible inmates will be transferred to or from foreign countries under treaty to facilitate the sentence of imprisonment required by that statute.

f. Inmates transferring from foreign countries into the United States will be provided the appropriate citizenship papers by the United States Embassy.

g. Biannual reports of the number of returned United States citizens remaining in Bureau custody or released within the reporting period will be maintained.

3. DIRECTIVES AFFECTED

a. Directive Rescinded

| | |
|---|---|
| PS 5140.25 | Transfer of Offenders to or from Foreign Countries (09/13/93) |

b. Directives Referenced

| | |
|---|---|
| PS 5040.04 | FBI Forms, Submission to the FBI (03/03/94) |
| PS 5100.06 | Security Designation and Custody Classification System (06/07/96) |
| PS 5140.26 | Civil Contempt of Court Commitments (05/02/94) |
| PS 5290.09 | Admission and Orientation Program (07/01/96) |
| PS 5540.04 | Prisoner Transportation Manual (04/15/93) |

4. STANDARDS REFERENCED. None.

5. PRETRIAL PROCEDURES. Procedures required in this Program Statement are not applicable to pretrial inmates or INS detainees.

6. BACKGROUND. In December 1977, the United States entered into its first treaty (with Mexico) for international offender transfer. Since that time, the United States has entered into treaties with a number of other foreign countries (see Attachment R). As additional countries enter into treaties, Attachment R will be updated accordingly.

Generally, a treaty provides for a non-citizen, convicted of a crime and sentenced to imprisonment or some form of conditional release (probation, parole, etc.) in another country to be

transferred to the individual's country of citizenship for sentence completion. While the term "prisoner-exchange" may be used, most actions under this Program Statement will be transfers and not offender-for-offender exchanges.

An offender's transfer is **voluntary** and subject to both countries' approval. To ensure and document that an offender's decision is informed and voluntary, a verification hearing is held before a U.S. Magistrate Judge or U.S. District Court Judge. Retained or court appointed counsel may represent the offender.

Jurisdiction over any proceeding to challenge, modify, or set aside the offender's conviction and/or sentence remains with the country imposing the sentence. Only the completion of the transferred offender's sentence is carried out according to the laws and procedures of the receiving country. Thus, offenders transferred to the United States come under authority of the Bureau of Prisons, the U.S. Parole Commission, the U.S. Probation and Pretrial Services Division, and/or the U.S. District Courts (for supervised release purposes).

Also, a state prisoner, including any state prisoner confined at a Bureau institution, may be returned to his or her country of citizenship if state law permits the transfer, the prisoner consents, and both countries agree. State authorities make referrals directly to the Office of Enforcement Operations (OEO), Prisoner Transfer Unit, Department of Justice. Unless the state inmate is already in Bureau custody upon referral, the Bureau of Prisons usually does not take custody of a state prisoner until after the verification hearing. The Bureau's role is to arrange for the prisoner's transportation to the treaty nation's custody.

The States Authorized to Transfer Foreign Nationals (Attachment L), lists those states known to have appropriate legislative authority to participate in prisoner transfers. Staff may also contact the Assistant Administrator, Correctional Programs Branch, Central Office, to determine whether a particular state has the required authority to participate in prisoner transfers.

7. **[DEFINITIONS §527.41. For the purpose of this rule, the following definitions apply.**

**a. Treaty Nation. A country which has entered into a treaty with the United States on the Execution of Penal Sentences.]**

Current treaty nations are listed in Attachment R.

**[b. State Prisoner. An inmate serving a sentence imposed in a court in one of the states of the United States, or in a territory or commonwealth of the United States.**

c. Departure Institution. The Bureau of Prisons institution to which an eligible inmate is finally transferred for return to his or her country of citizenship.

d. Admission institution. The Bureau of Prisons institution where a United States citizen-inmate is first received from a treaty nation.]

8. [LIMITATIONS ON TRANSFER OF OFFENDERS TO FOREIGN COUNTRIES §527.42

a. An inmate while in custody for civil contempt may not be considered for return to the inmate's country of citizenship for service of the sentence or commitment imposed in a United States court.]

This limitation applies to an inmate serving a criminal sentence, either concurrent with, or suspended for the duration of, the civil contempt commitment. The inmate may be considered for transfer once the contempt commitment is purged, served, or otherwise terminated by judicial authority. For further information, see the Program Statement on Civil Contempt of Court Commitments.

[b. An inmate with a committed fine may not be considered for return to the inmate's country of citizenship for service of a sentence imposed in a United States court without the permission of the court imposing the fine. When considered appropriate, the Warden may contact the sentencing court to request the court's permission to process the inmate's application for return to the inmate's country of citizenship.]

When an inmate otherwise appears to be an appropriate candidate for transfer to a foreign country, the Warden may request permission to proceed with the transfer process from the court imposing the fine. The inmate's transfer to a foreign country may not occur until either the fine is paid or the court imposing the fine concurs with the Bureau's transfer request.

Correspondence addressed to a Federal court shall include the inmate's register number and docket number(s) pertinent to the inquiry.

c. Pursuant to the prisoner transfer treaty with Mexico, Mexican inmates who are currently serving sentences for the following Immigration Law Violations are not eligible for treaty transfer consideration unless the immigration offense is totally absorbed by another current sentence:

(1) Illegal Entry into the United States (Offense Code 171);
(2) Alien Smuggling or Importation (Offense Code 172); and,
(3) Immigration National Laws (Offense Code 173).

9. [<u>NOTIFICATION OF BUREAU OF PRISONS INMATES</u> §527.43

**a. The Warden shall ensure that the institution's admission and orientation program includes information on international offender transfers.**

**b. The case manager of an inmate who is a citizen of a treaty nation shall inform the inmate of the treaty and provide the inmate with an opportunity to inquire about transfer to the country of citizenship. The inmate is to be given an opportunity to indicate on an appropriate form whether he or she is interested in transfer to the country of citizenship.]**

A Transfer Inquiry Form (BP-297)(Attachment M) allows the inmate to indicate that he or she was advised of the opportunity to inquire about transfer, or that he or she is or is not currently interested in being transferred.

10. [<u>TRANSFER OF BUREAU OF PRISONS INMATES TO OTHER COUNTRIES</u> §527.44

**a. An inmate who is qualified for and desires to return to his or her country of citizenship for service of a sentence imposed in a United States Court shall indicate his or her interest by completing and signing the appropriate form and forwarding it to the Warden at the institution where the inmate is confined.]**

The guidelines (and special processing requirements) for an inmate to transfer to certain treaty nations are listed in Attachments A - K. The Transfer Inquiry form (BP-297) (Attachment M), is to be used to initiate the transfer process.

**[b. Upon verifying that the inmate is qualified for transfer, the Warden shall forward all relevant information, including a complete classification package, to the Assistant Director, Correctional Programs Division.]**

The Classification Package shall contain the following documents and will be forwarded to the Central Office (<u>Attn</u>: Assistant Administrator, Correctional Programs Branch, Central Office), within 21 calendar days of initial classification:

(1) Transfer Inquiry Form (BP-297) (Attachment M); *

(2) Notice (to Correctional Programs Division) Regarding International Prisoner Transfer (BP-298) (Attachment N); *

(3) Inmate Information Provided to Treaty Nation (BP-299) (Attachment O); *

(4) Authorization to Release Confidential Information (BP-301) (Attachment P); *

(5) Case Summary (Attachment S);

(6) Pre/Post-sentence Investigation Report(s) (for current offense(s));

(7) F.B.I. Fingerprint Card with current photograph of inmate attached;

(8) Current sentence computation;

(9) Certified Judgment in a Criminal Case (J&C) (for current offense(s)); and,

(10) Proof of citizenship (copy of birth certificate or valid passport).

(*) These forms may be printed from BOPDOCS.

Unit staff shall place a **copy of the packet** in **section 2** of the **inmate central file.** Canadian Forms must be completed and signed/witnessed in **two places** for each request for transfer to Canada.

Note: During the initial application process, the inmate should be instructed to contact his or her nearest foreign consular office to advise them of his or her desire to be considered for treaty transfer. Foreign officials normally have documents for the inmate to complete and return to the local consulate and can also assist the inmate in providing proof of citizenship. Additionally, as part of their jobs, consular officials may request to visit the inmate at the institution.

**[c. The Assistant Director, Correctional Programs Division, shall review the submitted material and forward it to the Office of Enforcement Operations (OEO), Criminal Division, International Prisoner Transfer Unit, Department of Justice, for review.]**

The material shall be forwarded to OEO within 10 working days of receipt. OEO will consult with the appropriate agencies regarding the transfer. (Note: Applications for International Treaty Transfer require substantial investigation by OEO to include written verification on a number of items. Accordingly, the entire processing time is extensive. Institution staff should contact assigned staff within the Correctional Programs Branch, Correctional Programs Division, Central Office, for a status report, **not** OEO.)

**[d. The Assistant Director, Correctional Programs Division, shall ensure that the inmate is advised of the decision of OEO.**

**(1) When the Department of Justice determines that transfer is not appropriate, the Assistant Director, Correctional Programs Division, shall ensure that the inmate is advised of this determination and informed that the inmate may request the reason(s) for such action from OEO.]**

If the Department of Justice determines that the transfer is not appropriate, OEO shall notify the treaty nation via appropriate channels (e.g. through the U.S. State Department, appropriate Embassy, or the Ministry of Justice of the foreign nation) and the Assistant Director, Correctional Programs Division. Institution staff shall inform the inmate of OEO's policy on reapplication (see Sections 12 and 13 for additional information).

**[(2) When the Department of Justice determines that transfer is appropriate, the Assistant Director, Correctional Programs Division, shall ensure that the inmate is advised of the determination and of the probability that the inmate will be given an interview with his or her nation's consular officials.]**

If the Department of Justice determines that the transfer is appropriate, OEO will notify the U.S. State Department, appropriate Embassy, or appropriate Ministry of Justice about the inmate's interest in transfer, and the Assistant Director, Correctional Programs Division. Respective Embassies will arrange for consular officials to interview the inmate. In many instances, Consular officials interview the inmate prior to determination by DOJ that the transfer is appropriate.

**[e. Upon notification from OEO of the treaty nation's decision in regard to the inmate's transfer, the Assistant Director, Correctional Programs Division, shall arrange for the inmate to be informed of that decision.]**

When the treaty nation notifies the Department of Justice concerning the treaty nation's decision about the transfer, OEO shall inform the Assistant Director, Correctional Programs Division of the decision, and the Assistant Director shall inform the institution.

(Note: For some countries, Bolivia, Turkey, Peru, Thailand, and Panama, the **treaty requires** the respective foreign Government to request the inmate's transfer (see Attachment R)).

**[f. At an appropriate time subsequent to notification by the Department of Justice of an inmate's approval for transfer, the Assistant Director shall arrange for the inmate to be transferred to an appropriate departure institution.]**

To facilitate transfer both to the departure institution and the receiving country's custody, the sending Warden shall ensure

that the inmate's personal property is limited in accordance with the Prisoner Transportation Manual.

**[g. Prior to the inmate's transfer from the departure institution, the inmate shall receive a verification hearing before a U.S. Magistrate Judge or U.S. District Court Judge to document the inmate's voluntary consent for transfer. Counsel is provided to the inmate for the purpose of this hearing. When requested, the Warden shall allow counsel to interview the inmate prior to the hearing.]**

OEO shall arrange with the Administrative Office of the U.S. Courts (AOUSC) for appointment of counsel and for scheduling the verification hearing. Counsel may arrange with the Warden to interview the inmate prior to the hearing. The AOUSC shall arrange for a U.S. Magistrate Judge or U.S. District Court Judge to conduct the verification hearings.

The Warden shall request written confirmation once the verification proceedings are completed and the U.S. Magistrate Judge or U.S. District Court Judge has documented the inmate's voluntary consent.

**[h. Following the verification hearing, the Assistant Director, Correctional Programs Division, shall arrange a schedule for delivery of the inmate to the authorities of the country of citizenship.**

**(1) The Assistant Director shall advise the Warden of those arrangements.**

**(2) The Warden shall arrange for the inmate to be transported to the foreign authorities. The Warden shall assure that required documentation (for example, proof of citizenship and appropriate travel documents) accompanies each inmate transported.]**

i. Staff designated by the Warden shall assure that the following documentation accompanies each inmate transported:

(1) Proof of citizenship. Foreign countries will <u>not</u> admit the inmate without proof of citizenship;
(2) Any appropriate travel documents. (Passport Certificate of Travel prepared by respective embassy);
(3) A current, up-to-date statement of actual time served up to the date of transfer; and,
(4) A current, up-to-date statement of any remission credits.

j. The Inmate Systems Manager (ISM) at the departure institution shall submit the Final Disposition Report (FBI Form R-84), in accordance with instructions contained in the Program

Statement on Submission of Forms to the FBI. The **Final Disposition and Date** block on the form must contain the statement: "Transferred to (country) for completion of U.S. Sentence" and the date on which the transfer was effected.

11. [<u>**TRANSFER OF STATE PRISONERS TO OTHER COUNTRIES**</u> **§527.45. The Bureau of Prisons may assume custody of a state prisoner who has been approved for transfer to a treaty nation for the purpose of facilitating the transfer to the treaty nation. Once approved, the state is not required to contract for the placement of the prisoner in federal custody, nor to reimburse the United States for the cost of confinement (as would ordinarily be required by 18 U.S.C. 5003).]**

a. When a state prisoner applies for transfer, is found to be qualified, and the state determines that the transfer is appropriate and in accordance with its laws, the state may refer the inmate's case to OEO, to determine if the United States and the treaty nation agree to the transfer as described in Sections 10.d. and e.

b. If the prisoner is approved for transfer, OEO shall arrange for a verification hearing before a U.S. Magistrate Judge or U.S. District Court Judge in the state where the prisoner is confined.

c. Upon finding that the inmate is to be transferred, the U.S. Magistrate Judge or U.S. District Court Judge shall order the prisoner placed in federal custody for transportation to the treaty nation's custody.

d. The Bureau of Prisons or a designated U.S. Marshal will assume custody of the prisoner, **ensuring** that the **documentation** described in **Section 10.i.** is **received** and that it **accompanies the inmate** to the designated departure institution.

e. When the inmate arrives at the departure institution, the Warden shall follow the procedures outlined in Sections 10.h. and i.

f. The Warden of the departure institution shall return the copy of the executed Receipt Upon Transfer to Treaty Nation form (BP-300)(Attachment Q) to the appropriate state correctional agency.

g. ISMs shall record the lodging of a state prisoner in Bureau of Prisons' institutions enroute to the country of citizenship as a "Treaty Transfer."

12. <u>REAPPLICATION FOR INTERNATIONAL TREATY TRANSFER</u>. An inmate who has been denied treaty transfer to his/her country of citizenship may re-apply two years from the date of denial. The date of denial is defined as the date on the OEO denial letter.

A complete classification package is **not** required for reapplication cases as OEO maintains the original classification materials. Institution staff need only submit the following to the Assistant Administrator, Correctional Programs Branch:

a. Memorandum indicating the date the inmate was previously denied and that he/she wishes to re-apply;
b. New Transfer Inquiry form (BP-297); and,
c. An updated Case Summary.

13. CASES ON APPEAL. OEO cannot make a final determination if the inmate has appealed his or her case. Accordingly, OEO will issue a written notification indicating that the inmate is "currently ineligible" as he or she has filed an appeal. This information shall be forwarded to the institution from the Central Office.

When the appeal process has ended, the inmate may re-apply for treaty transfer consideration. Institution staff do not need to submit a new application packet, but rather need only submit the following to the Assistant Administrator, Correctional Programs Branch:

a. Memorandum indicating the inmate's case is no longer on appeal, and he or she still wishes to apply for foreign transfer.

b. Documentation from the court showing the appeal was dismissed, withdrawn, etc.

Upon receiving the above information, OEO will re-open the case and make a final determination.

14. SENTRY APPLICATIONS. Case Management Activity (CMA) assignments have been created for treaty transfer cases to enable staff to more effectively track these inmates. Six different assignments may be applied in conjunction with the established SENTRY country codes. Country codes and assignments may be accessed through the SENTRY General Use Technical Reference Manual, "Code Tables" section.

The new CMA assignments are described below using **Canada (CA)** as an example:

| GROUP CODE | ASSIGNMENT | DESCRIPTION |
|---|---|---|
| TTCA | TTCA-ELIG | ITT CA ELIGIBLE |
| TTCA | TTCA-INEL | ITT CA INELIGIBLE |
| TTCA | TTCA-INT | ITT CA INT IN TRTY TRANS |
| TTCA | TTCA-NO I | ITT CA NO INT TRTY TRANS |
| TTCA | TTCA-APPR | ITT CA APPR F/TRTY TRANS |
| TTCA | TTCA-DENY | ITT CA DENIED TRTY TRANS |

■ ELIGIBLE: The Case Manager enters this CMA assignment, prior to initial classification, if the inmate is from a treaty country.

■ INELIGIBLE: The Case Manager enters this CMA assignment, prior to initial classification:

- if the inmate has less than six months remaining to serve,

- if there is documentation on file to indicate the inmate is appealing his/her sentence, or

- the inmate is presently serving an immigration offense (see Section 8.c. for information on Immigration Law Violations), if the inmate is from a treaty country.

■ INTERESTED IN TREATY TRANSFER: The Case Manager enters this CMA assignment following Initial Classification if it is determined the inmate wishes to be considered for treaty transfer and he/she has submitted a written request (BP-297).

■ NO INTEREST IN TREATY TRANSFER: The Case Manager will enter this CMA assignment following the Initial Classification if it is determined the inmate is not interested in treaty transfer and he/she has submitted written documentation (BP-297).

■ APPROVED FOR TREATY TRANSFER: Correctional Programs Branch, Central Office, enters this CMA assignment upon receiving written notification from OEO that the inmate has been approved for treaty transfer.

■ DENIED TREATY TRANSFER: Correctional Programs Branch, Central Office, enters this CMA assignment upon receiving written notification from OEO that the inmate has been denied treaty transfer.

Note: When changing the CMA assignments described above, staff must replace the current assignment and not add another one. There should only be one assignment for these cases.

15. [**RECEIVING UNITED STATES CITIZENS FROM OTHER COUNTRIES §527.46**

**a. Staff accepting custody of American inmates from a foreign authority shall ensure that the following documentation is available prior to accepting custody of the inmate:**

**(1) A certified copy of the sentence handed down by an appropriate, competent judicial authority of the transferring country and any modifications thereof;**

**(2) A statement (and a copy translated into English from the language of the country of origin if other than English), duly authenticated, detailing the offense for which the offender was convicted, the duration of the sentence, and the length of time already served by the inmate. Included should be statements of credits to which the offender is entitled, such as work done, good behavior, pre-trial confinement, etc.; and**

**(3) Citizenship papers necessary for the inmate to enter the United States.]**

OEO will notify the Central Office, which, in turn, notifies the admission institution when an American citizen is to be returned to the United States. As soon as sufficient information is available on prisoners being transferred into the United States (name, date of birth, etc.), the Assistant Director, Correctional Programs Division shall obtain, in advance of the transfer, information on each prisoner's criminal record and/or outstanding warrants. This can be accomplished through NCIC or the FBI. The Correctional Programs Division, with assistance from OEO, shall coordinate all arrangements for an inmate's transfer to the United States.

The U.S. Embassy will provide whatever citizenship papers are necessary to enable the inmate to enter the United States. **Staff escorting** the inmate **must have those papers** available **upon entry** into the United States.

In addition to the above documents, staff are to ensure that the inmate has received the required verification hearing (before a U.S. Magistrate Judge or U.S. District Court Judge to document the inmate's voluntary consent for transfer).

**[b. The Assistant Director, Correctional Programs Division, shall direct, in writing, specific staff, preferably staff who speak the language of the treaty nation, to escort the offender from the transporting country to the admission institution. The directive shall cite 28 CFR 0.96b as the authority to escort the offender. When the admission institution is not able to accept the inmate (for example, a female inmate escorted to a male institution), the Warden shall make appropriate housing requirements with a nearby jail.]**

Staff shall sign the documents necessary to receive the inmate. Inmates and their property will be processed through the INS and U.S. Customs Service at the U.S. border or another appropriate transfer point.

If there are female inmates among those being transferred to the United States, and the admitting institution does not accept female inmates, the Warden shall make appropriate arrangements with a nearby correctional institution. In such situations, the

admission institution retains case management responsibilities for the female inmates until they are transferred to an appropriate Bureau institution.

**[c. As soon as practicable after the inmate's arrival at the admission institution, staff shall initiate the following actions:**

**(1) Arrange for the inmate to receive a complete physical examination;**

**(2) Advise the local U.S. Probation Office of the inmate's arrival; and]**

The local U.S. Probation Office ordinarily interviews the inmate and completes U.S. Probation Form 1A, as well as the Authorization to Release Confidential Information (BP-301) (Attachment P). The official version of the offense shall be placed in the inmate central file (if a translated copy has not been provided, a bilingual staff member or reliable translation service shall prepare one). Staff shall forward a copy of all available information on the transferring inmate to the U.S. Probation Office for preparation of the Post-Sentence Report. Staff shall request that the Probation Office designate an appropriate Probation Officer to prepare the necessary Post-Sentence Report, to be forwarded to the institution designated within 30 days.

**[(3) Notify the U.S. Parole Commission of the inmate's arrival and projected release date]**.

Inmates returning from other countries are by law immediately eligible for parole if they committed their offense prior to November 1, 1987. Prisoners who committed their foreign offense on or after November 1, 1987, shall also receive a hearing before the U.S. Parole Commission within 180 days of entry into the United States, or as soon as practicable, pursuant to 18 U.S.C. § 4106A and 28 CFR §2.62.

If upon computation of sentence, staff determine that an inmate is within six months of release, the U.S. Parole Commission is permitted to render a determination of both a release date and a period and conditions of supervised release, without an in-person parole hearing. When the inmate has less than six months to serve, staff shall send a **prompt** notification to the U.S. Parole Commission advising them of the impending release date. Depending on the amount of time remaining to serve, staff should send the sentence computation information either via mail or by facsimile.

Staff at the admission institution shall also determine if each inmate received at that institution should be retained at

the admission institution for the initial hearing before the U.S. Parole Commission or promptly transferred to a more appropriate institution. The Case Management Coordinator at the appropriate time shall request that the Regional Designator designate an appropriate institution.

**[d. If upon computation of sentence, staff determine that an inmate is entitled to immediate release via mandatory release or expiration of sentence with credits applied, release procedures shall be implemented but only after receiving a medical clearance and the results of an FBI fingerprint check.]**

Medical clearance shall be obtained from the Health Services Administrator. Arrangements must be made with the local FBI office for prompt processing of an NCIC check at the minimum, and a full fingerprint check, if possible. The U.S. Probation Officer is to be notified by phone in advance of the inmate's release and be provided with all available information regarding the inmate. A post-sentence report need not be requested in these cases.

16. <u>BIANNUAL REPORT REQUIRED</u>. Prisoner transfer treaties provide that follow-up information may be requested by treaty nations concerning U.S. citizens returned to the United States. The Office of Information Systems (OIS) in the Central Office shall provide OEO and the Assistant Administrator, Correctional Programs Branch, a report, as of December 31 and June 30 of each year, showing those returned U.S. citizens remaining in Bureau custody or released within the reporting period. Reports shall group inmates by transferring treaty nation and contain the following information:

(a) Name and Register Number;
(b) FBI number;
(c) Date committed (to BOP);
(d) How committed;
(e) Date sentence began;
(f) Statutory release date;
(g) Offense;
(h) Location of confinement or release;
(i) Method of release (if released); and,
(j) Date released (if released).

17. <u>TRANSLATION</u>. This Program Statement is to be translated into Spanish and French.

Kathleen M. Hawk
Kathleen M. Hawk
Director

## List of Attachments

Country Guidelines for Bolivia . . . . . . . . . . . Attachment A «

Country Guidelines for Canada . . . . . . . . . . . Attachment B «

Canadian Form CSC/SCC 308, Request for Transfer to Canada Under Terms of the Treaty . . . . . . Attachment C ☼

Canadian Form CSC/SCC 614, Information and Decision Form for Transfer to Canada Under Terms of the Treaty . . . . . . . . . . . Attachment D ☼

Guidelines for Council of Europe Convention on the Transfer of Sentenced Persons . . . . . . Attachment E «

Country Guidelines for France . . . . . . . . . . Attachment F «

Country Guidelines for Mexico . . . . . . . . . . Attachment G «

Country Guidelines for Panama . . . . . . . . . . Attachment H «

Country Guidelines for Peru . . . . . . . . . . . Attachment I «

Country Guidelines for Thailand . . . . . . . . . Attachment J «

Country Guidelines for Turkey . . . . . . . . . . Attachment K «

States Authorized to Transfer Foreign Nationals . Attachment L «

Transfer Inquiry Form (BP-297) . . . . . . . . . Attachment M √

Notice Regarding International Prisoner Transfer (BP-298) . . . . . . . . . . Attachment N √

Inmate Information Provided to Treaty Nation (BP-299) . . . . . . . . . . . . . . . . . . . Attachment O √

Authorization to Release Confidential Information (BP-301) . . . . . . . . . . . . . . Attachment P √

Receipt Upon Transfer to Treaty Nation (BP-300) . Attachment Q √

United States Prisoner Transfer Treaties . . . . Attachment R «

Certified U.S. Case Summary . . . . . . . . . . . Attachment S «

« Attached to Program Statement.
☼ Institutions may request forms from Assistant Administrator, Central Office.
√ Can be retrieved through BOPDOCS.

## BOLIVIA

1. GUIDELINES

   a. The inmate must be convicted and sentenced.

   b. The inmate must not be committed for a military offense.

   c. The inmate must have at least six months of the current sentence remaining to be served at the time of request for transfer.

   d. The inmate must have no pending proceeding by way of appeal or collateral attack upon the current conviction or sentence.

   e. The inmate must have complied with each provision of the current sentence other than the period of detention; that is, all fines, restitution, court costs, etc., must be satisfied prior to transfer.

   f. The inmate must be convicted of a crime which is generally punishable as a crime under the laws of the other country.

   g. The inmate has not been sentenced to the death penalty.

   h. If the inmate has an outstanding detainer and the detaining authorities refuse to agree to the inmate's transfer in writing, the inmate cannot be transferred.

**Special Note: The inmate should be instructed to write his/her embassy in the United States, requesting transfer under the treaty. This should normally be completed prior to forwarding the request to the Assistant Director.**

Note: The country guidelines should not be construed as specific qualifications for each foreign country. Inmates may still be considered for transfer even though they do not appear to meet one or more of these guidelines; the final decision is made by OEO.

CANADA

1. GUIDELINES

a. The inmate must be convicted and sentenced.

b. The inmate must not be committed solely for a military or immigration offense if the request is made under the guidelines stipulated by the bilateral treaty (request for transfer under the Convention of Europe allows such offenses).

c. The inmate must have at least six months of the current sentence remaining to be served at the time of request for transfer.

d. The inmate must have no pending proceeding by way of appeal or collateral attack upon the current conviction or sentence.

e. The inmate must be convicted of a crime which is generally punishable as a crime under the laws of the other country.

f. If the inmate has an outstanding detainer and detaining authorities refuse to agree to the inmate's transfer, the inmate cannot be transferred.

g. The inmate will not be transferred unless either the sentence he is serving has a specific duration (determining sentence) or such a duration has subsequently been fixed by the appropriate administrative authorities or the inmate is serving a life sentence.

2. SPECIAL NOTICE ABOUT INMATE'S REQUEST FOR TRANSFER TO CANADA

In addition, to Form BP-297, "Transfer Inquiry," an inmate applying for transfer to Canada must complete Canada's Correctional Service form entitled "Schedule II, Transfer of Offenders Act" (2 pages, actually "front" and "back" of one form) and Canada's "Information and Decision Form for Transfer to Canada under Terms of the Treaty Between Canada and the U.S." Copies of these forms will be attached to the hard copy of the Program Statement issued. Since these forms are not available through the regular forms ordering procedures, institutions may request additional forms from the Assistant Administrator, Correctional Programs Branch, Central Office.

Canada will issue temporary passports to prisoners for international transfer purposes only. These passports will serve as proof of citizenship at the border, but does not diminish BOP responsibility to establish proof of citizenship per section 6, subsection i, of this Program Statement. The Application for a Search of Citizenship Registration Records form should be

CANADA - (Continued)

completed if the inmate does not have proof of citizenship. The completed form should be sent directly to Canada. The mailing address is on the back of the form. A copy of the mailed form should be included in the referral package.

Note: The country guidelines should not be construed as specific qualifications for each foreign country. Inmates may still be considered for transfer even though they do not appear to meet one or more of these guidelines; the final decision is made by OEO.

PLEASE NOTE THE FOLLOWING REGARDING THE ATTACHED FORMS FOR TRANSFER TO CANADA

1. The Schedule II - Transfer of Offenders Act Form (CSC 308/SCC 308) and the Information and Decision Form for Transfer to Canada (CSC/SCC 614) should be included in the prisoner's transfer application papers which are sent by either the State authorities or the United States Bureau of Prisons to the Office of Enforcement Operations, United States Department of Justice, for initial review. Both forms must be signed by the prisoner and a witness, and dated.

2. If the prisoner has proof of his or her citizenship, a copy of the document should be included in the prisoner's transfer application papers which are sent to the Office of Enforcement Operations.

3. If the prisoner was born in Canada and has no proof of his or her Canadian citizenship, the prisoner should write to the province of birth (See attached list for addresses).

4. If the prisoner was born outside of Canada and has no proof of his or her Canadian citizenship, the prisoner should complete The Application for a Search of Citizenship Registration Records Form (SeC 3-58A) and send it as soon as possible directly to Canada, to the address given on the reverse of the form.

5. The acceptable forms of proof of Canadian citizenship are as follows:

- A Canadian passport. (This is the most convenient form.)
- A Canadian citizenship card or certificate.
- A birth certificate from a Canadian province.
- A letter from the appropriate provincial authority certifying that the prisoner was born in Canada.

- A Canadian baptismal certificate, but only from the province of Quebec. (Quebec is the only province which recognizes a baptismal certificate as an official document.)

- A letter from the Citizenship Branch (Department of the Secretary of State of Canada) certifying that the prisoner is a Canadian citizen.

6. A prisoner who, at the time of completing the forms mentioned in Paragraph No. 1, does not have proof of citizenship should indicate that he or she has applied for such proof.

Canadian birth certificates are available from the province of birth. Applicants should write to the appropriate address listed with the following information.

Applicant's full name (including all given names);
Place and date of birth;
Names of parents, including mother's maiden name; and,
Reason why certificate required.

Where the birth has been registered, you should receive the certificate in the mail within a month.

ALBERTA

Director of Vital Statistics,
Dept. of Health and Welfare
10405 - 100th Avenue,
EDMONTON, Alberta T5J 0A6
($3.00 payable to the
Provincial Treasurer)
403-427-2681

BRITISH COLUMBIA

Director,
Vital Statistics Division,
of Health Services &
Hospital Insurance
1515 Blanchard Street,
VICTORIA, British Columbia
V8W 3C8
($5.00 payable to the Minister
of Finance)
604-387-6466
604-387-3378

NOVA SCOTIA

Register General,
P.O. Box 157,
HALIFAX, Nova Scotia
B3J 2M9 ($5.00 payable to
Registrar General)
902-424-4373

ONTARIO

Deputy Registrar General,
MacDonald Block, Queen's Dept.
Park, TORONTO, Ontario
M7A 1Y5 ($5.00 payable to
Treasurer of Ontario)
416-965-1687

MANITOBA

Office of Vital Statistics,
Health and Social
Services,
Room 104, Norguay Building,
401 York Ave.,
WINNIPEG, Manitoba R3C OV8
($5.00 payable to the Minister
of Finance)
($7.00 fee for a genealogical
form)
204-944-3701

NEW BRUNSWICK

Dept. of Health,
Vital Statistics
P.O. Box 6000
FREDERICTON, New Brunswick
E3B 5H1
($3.00 payable to the Minister
of Finance)
506-453-2717

NEWFOUNDLAND

Registrar, Vital Statistics
Dept. of Health
Confederation Building
ST. JOHN'S, Newfoundland
A1C 5T7
($5.00 payable to the
Department of Health
709-737-3308

NORTHWEST TERRITORIES

Registrar General of Vital
Statistics,
Department Justice and Public
Service,
Government of Northwest
Territories,
P.O. Box 1320
N.W.T. X1A 2L9
($5.00 payable to Vital
Statistics, Govt. N.W.T.)
403-873-7404

PRINCE EDWARD ISLAND

Division of Vital Dept. of
Statistics, Dept. of Health
and Social Services
P.O. Box 2000
CHARLOTTETOWN, P.E.I. CIA
7N8 ($3.00 payable to the
Minister of Finance)
902-892-5471

QUEBEC

See below*

SASKATCHEWAN

Director, Vital Statistics,
Research & Planning Branch,
Dept. of Public Health,
T.C. Douglas Bldg.,
3475 Albert Street,
REGINA, Saskatchewan S4S
6X6 ($5.00 payable to Dept.
of Public Health)
306-565-3092

YUKON

Registrar General,
Vital Statistics
Government of Yukon
Territories,
P.O. Box 2703,
WHITEHORSE, Y.T. Y1A 2C6
($5.00 payable to YELLOWKNIFE,
Territorial Treasurer)
403-667-5207

* Applicants born in the province of Quebec may submit as documentary proof of Canadian citizenship a Certificate of Birth issued by religious, municipal or judicial authorities provided that the place and date of birth is indicated, or a Certificate issued by the Judicial District where the birth was registered. See attached list.

SCHEDULE II / ANNEXE II

TRANSFER OF OFFENDERS ACT / LOI SUR LE TRANSFÈREMENT DES DÉLINQUANTS

REQUEST FOR TRANSFER TO CANADA UNDER TERMS OF THE TREATY
DEMANDE DE TRANSFÈREMENT AU CANADA SELON LES TERMES DU

BETWEEN CANADA AND
TRAITÉ ENTRE LE CANADA ET ________________ ON / SUR
Foreign state - État étranger

THE EXECUTION OF PENAL SENTENCES
L'EXÉCUTION DES PEINES IMPOSÉES AUX TERMES DU DROIT CRIMINEL

Name - Nom | Institution - Établissement

## 1. APPLICATION - DEMANDE

I hereby request a transfer to Canada to complete my sentence, for the following reasons:

Je, soussigné, demande par les présentes un transfèrement au Canada en vue de purger le reste de ma peine pour les raisons suivantes:

Signature | Witness - Témoins | Date (Y-A M D-J)

## 2. PERSONAL IDENTIFICATION - IDENTITÉ

Aliases - Alias | Birth date - Date de naissance (Y-A M D-J)

Place of birth (City, province/state, country) - Lieu de naissance (Ville, province/état, pays)

Last address in Canada (number, street, apt., city, province) - Dernière adresse au Canada (numéro, rue, appartement, ville, province)

## 3. NEXT OF KIN - PLUS PROCHE PARENT

☐ Mr. M. ☐ Mrs. Mme ☐ Miss Mlle ☐ Ms Md | Last name - Nom de famille | Given names - Prénoms | Initials - Initiales

Address (Number, street, apt., city, province/country, state) - Adresse (Numéro, rue, app., ville, province/pays, état)

Telephone number - Numéro de téléphone | Relationship to you / Lien familial | My - C'est mon (ma)

## 4. CITIZENSHIP - NATIONALITÉ

Are you a Canadian citizen by - Êtes-vous citoyen canadien

a) Birth / de naissance ☐ Yes Oui ☐ No Non

b) the grant of a certificate of citizenship / par l'octroi d'un certificat de citoyenneté ☐ Yes Oui ☐ No Non

c) the grant of a certificate of naturalization / par l'octroi d'un certificat de naturalisation ☐ Yes Oui ☐ No Non

NOTE: You are required to prove that you are a Canadian citizen. For assistance in this matter, contact the nearest Canadian diplomatic post.

NOTA: Il est exigé que vous fournissiez la preuve de votre citoyenneté canadienne. Si vous avez besoin d'aide à cet égard, veuillez communiquer avec le représentant diplomatique le plus rapproché.

## 5. EDUCATION AND WORK EXPERIENCE - INSTRUCTION ET EXPÉRIENCE

Briefly state your education and work experience as indicated below:

Indiquez brièvement votre niveau d'instruction et votre expérience de travail aux espaces prévus ci-dessous:

a) Level of education / Niveau d'instruction

b) Current training programs or occupation - Programmes de formation en cours ou occupation

c) Previous work experience or occupational training - Expérience de travail ou formation professionnelle antérieure

## 6. CHOICE OF DESTINATION - CHOIX DE DESTINATION

a) The following is to be completed by an applicant who is

(i) less than sixteen years of age,
(ii) serving a term of imprisonment of less than two years,
(iii) on parole, or
(iv) on probation.

a) applicable aux requérants qui

(i) ont moins de seize ans,
(ii) purgent une peine de moins de deux ans,
(iii) sont en liberté conditionnelle ou
(iv) sont sous le régime de probation.

Number in order of preference, the provinces or territories of Canada to which you would be interested in transferring:

Numérotez, par ordre de préférence, les provinces ou les territoires du Canada où vous accepteriez d'être transféré:

☐ Newfoundland / Terre-Neuve
☐ Nova Scotia / Nouvelle-Écosse
☐ Prince Edward Island / Île du Prince-Édouard
☐ New Brunswick / Nouveau-Brunswick
☐ Quebec / Québec
☐ Ontario
☐ Manitoba
☐ Saskatchewan
☐ Alberta
☐ British Columbia / Colombie-Britannique
☐ Northwest Territories / Territoires du Nord-Ouest
☐ Yukon Territory / Territoire du Yukon

b) The following is to be completed by an applicant who has been sentenced to two years or more in a penal institution.

b) Applicable aux requérants qui ont été condamnés à deux ans ou plus dans un établissement de détention.

Number in order of preference, the regions to which you would be interested in transferring.

Numérotez, par ordre de préférence, les régions où vous accepteriez d'être transféré.

☐ Atlantic / Atlantique
☐ Quebec / Québec
☐ Ontario
☐ Prairies
☐ British Columbia / Colombie-Britannique

NOTE: This application will be used to determine whether you will or will not be transferred to Canada. If you are transferred your choice of province or region will be considered but your actual destination will be decided by Canadian correctional officials after your arrival.

NOTA: Cette demande servira à déterminer si vous serez transféré ou non au Canada. Si votre demande est acceptée, on cherchera à tenir compte de votre choix de province ou de région; votre destination finale sera toutefois déterminée par les autorités canadiennes correctionnelles après votre arrivée au pays.

## 7. SUPPORT - SOUTIEN

List persons or agencies who might be willing to give you support following your tansfer.

Énumérez les personnes ou les organismes susceptibles de vous accorder leur soutien après votre transfert.

| NAME - NOM | ADDRESS - ADRESSE |
|---|---|
| | |

## 8. OTHER INFORMATION - AUTRES RENSEIGNEMENTS

Set out any other information that you think Canadian officials should know about you or your case.

Croyez-vous que d'autres renseignements sur votre cas devraient être connus des autorités canadiennes?

Correctional Service Canada | Service correctionnel Canada

PROTECTED / PROTÉGÉE A B C ONCE COMPLETED / UNE FOIS REMPLIE

PERSONAL INFORMATION BANK
FICHIER DE RENSEIGNEMENTS PERSONNELS

# INFORMATION AND DECISION FORM FOR TRANSFER TO CANADA UNDER TERMS OF THE TREATY BETWEEN CANADA AND
# FORMULAIRE DE RENSEIGNEMENTS ET DE DÉCISION POUR TRANSFERT AU CANADA SELON LES TERMES DU TRAITÉ ENTRE LE CANADA ET

FOREIGN STATE - ÉTAT ÉTRANGER

## 1. PERSONAL DATA - DONNÉES PERSONNELLES

Last name - Nom de famille

Given name(s) - Prénom(s)

Sex - Sexe
☐ Male / Masculin ☐ Female / Féminin

Marital status - État civil

Language spoken - Langues parlées
☐ English / Anglais ☐ French / Français ☐ Other / Autre

Preferred working language - Langue de travail de préférence
☐ English / Anglais ☐ French / Français

Synopsis of personal and family history - Sommaire des antécédents familiaux et personnels

## 2. RESIDENCE ABROAD - SÉJOUR À L'ÉTRANGER

How long have you resided abroad?
Depuis combien de temps demeurez-vous à l'étranger?

Years - Années | Months - Mois

Briefly state your reasons for being abroad - Énoncez brièvement les raisons pour votre séjour à l'étranger

A312

FS 5140.29

Attachment D Page 2

## 3. STATUS - STATUT PERSONNEL

a)

INCARCERATED
INCARCÉRÉ(E)

☐ Federal - Fédéral ☐ State - État
☐ Other (Specify) - Autre (Préciser) ▶

Institution/Address - Établissement/Adresse

OR
OU

ON SUPERVISION
EN SURVEILLANCE

☐ Parole - Libération conditionnelle ☐ Probation
☐ Other (Specify) - Autre (Préciser) ▶

Name of supervising authority - Nom de l'agence de surveillance

Address - Adresse

Offender's address - Adresse du délinquant

Name of supervisor - Nom du surveillant

b) Outstanding charges - Accusations en instance

Jurisdiction - Juridiction

## 4. CURRENT OFFENCE(S) - INFRACTION(S) À L'ORIGINE DE LA PEINE ACTUELLE

| a) Type of offence - Genre d'infraction | Sentence - Peine | Place sentenced - Lieu de condamnation | Date Y-A M D-J |
|---|---|---|---|
| | | | |

| b) Estimated aggregate sentence - Durée prévue de la peine totale | Years - Années | Months - Mois | Date sentence commenced - Date à laquelle la peine a débuté | Y-A | M | D-J | Date sentence expires - Date d'expiration de la peine | Y-A | M | D-J |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

c) Name of accomplices - Noms des complices

d) Offender's version of offence - Version de l'infraction fournie par le délinquant

A313

e) FOR USE BY THE CANADIAN GOVERNMENT - À L'USAGE DU GOUVERNEMENT CANADIEN

ELIGIBILITY DATES (IN CANADA) - DATES D'ADMISSIBILITÉ (AU CANADA)

| Parole - Libération conditionnelle | Y-A | M | D-J | Day parole - Libération conditionnelle de jour | Y-A | M | D-J | Temporary absence - Absence temporaire | Y-A | M | D-J |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

## 5. PREVIOUS CRIMINAL HISTORY (In Canada and abroad) - ANTÉCÉDENTS JUDICIAIRES (Au Canada et à l'étranger)

| a) Previous conviction(s) Condamnation(s) antérieure(s) | Most serious conviction(s)/ Type of conviction(s) Condamnation(s) antérieur(s) la (les)plus grave(s)/Genre de condamnation(s) | Place - Lieu | Y-A |
|---|---|---|---|
| ☐ No Non<br>☐ Yes Oui | | | |

**b)** Previous institutional experience - Séjour(s) antérieur(s) en établissement

☐ No Non
☐ Yes (Specify) Oui (Préciser)

**i)** Previous protective custody - Séjour(s) antérieur(s) en protection

☐ No Non
☐ Yes (Specify) Oui (Préciser)

**ii)** Escape/Attempted escape history - Évasion(s)/tentative(s) d'évasion

| ☐ None Aucune ☐ Yes Oui | Name of institution Nom de l'établissement | Year Année | Attempted Tentative | Successful Réussie |
|---|---|---|---|---|
| ☐ Institution Établissement | | | | |
| ☐ Other type(s) of escape Autre genre d'évasion Specify - Préciser | | | | |

Escape/Attempts have included:
Au cours des évasions/tentatives d'évasion, il y a eu:

☐ Use of weapons Utilisation d'armes
☐ Hostage taking Prise d'otages
☐ Physical violence Violence physique
☐ No violence Aucune violence

Escape/Attempts have resulted in:
Évasions/tentatives d'évasion ont causé:

☐ Property damage Dommages matériels
☐ Injury Blessures
☐ Death Mort
☐ None of the preceding Rien de ce qui précède

**iii)** Previous involvement in institutional incidents - Participation(s) antérieure(s) dans des manifestations en établissement

☐ Sit down Grève
☐ Riot Émeute
☐ Hostage taking Prise d'otages
☐ Assault Voies de fait

Specify - Préciser

**iv)** Last institutional release - Dernière libération d'un établissement

| Name and type of institution Nom et genre d'établissement | Y-A | Type of release - Genre de libération |
|---|---|---|
| | | |

**c)** Previous supervision experience (Summarize below) - Période(s) antérieure(s) de surveillance (Donner un bref aperçu ci-après)

☐ No Non
☐ Yes Oui



See reverse side - Voir au verso

d) History of violence - Antécédents de violence

Violent incidents involving offender have occured in:
Délinquant impliqué dans des incidents violents dans:

☐ Community / Collectivité ☐ Prison / La prison

☐ No history of violence / Pas d'antécédents de violence

Specify - Préciser

Violent incidents resulted in:
Incidents violents ont causé:

☐ Property damage / Dommages matériels

☐ Injury / Blessures → ☐ Serious / Sérieuses ☐ Minor / Légères

☐ Death / Mort

Violent incidents included the use of:
Au cours des incidents violents, il a utilisé:

☐ Firearms / Armes à feu

☐ Other (Specify) / Autre (Préciser)

## 6. PROGRAM FACTORS - PROGRAMMES

a) Offender's occupational and program interests - Intérêts du délinquant quant aux programmes et au travail

| TYPE - GENRE | SPECIFY ACTIVITIES - PRÉCISER CES ACTIVITÉS |
|---|---|
| ☐ Educational/Vocational / Scolaire/professionnel | |
| ☐ Industrial/Forestry / Industriel/Forestier | |
| ☐ Agricultural / Agricole | |
| ☐ Individual/Group Counselling / Counselling de groupe/personnel | |
| ☐ Other / Autres | |

b) Drug/Alcohol involvement - Usage de drogue/alcool

☐ None / Aucun ☐ Unknown / Inconnu ☐ Soft drugs / Drogues douces ☐ Opiates / Narcotiques ☐ Other (Non-opiates) / Autres (non-narcotiques) ☐ Alcohol / Alcool

Current offence related to drug or alcohol involvement - Infraction à l'origine de la peine actuelle reliée à la drogue ou à l'alcool

DRUGS - DROGUES

☐ No / Non ☐ Yes / Oui ☐ User / Consommation ☐ Trafficker / Trafic

ALCOHOL - ALCOOL

☐ No / Non ☐ Yes / Oui

Participation in drug/alcohol treatment
Participation à des cures (drogue ou alcool)

PAST - PASSÉ: ☐ No / Non ☐ Yes / Oui

PRESENT - PRÉSENT: ☐ No / Non ☐ Yes / Oui

c) General health - État de santé général

Claimed medical ailments - Malaises déclarés

☐ No / Non ☐ Yes (Specify) / Oui (Préciser)

Medication required - Médicaments requis

☐ No / Non ☐ Yes (Specify type) / Oui (Préciser le genre)

d) Offender's immediate needs - Besoins immédiats du délinquant

I) Protective custody requested / Demande de protection → ☐ No / Non ☐ Yes / Oui

If yes, specify (reasons) - Si oui, donner (raisons)